[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON STANDARD FIRE INSURANCE AND AETNA CASUALTY SURETY COMPANY MOTION FOR SUMMARY JUDGMENT
The plaintiffs have sued the defendant insurance companies under several theories of liability.
The defendants, Standard Fire Insurance Company and Aetna Casualty and Surety Company, have filed a motion for summary judgment directed against the breach of contract claim, the claim for intentional infliction of emotional distress and the claim for bad faith.
The court will discuss each theory of liability separately as they relate to this motion and will refer to the facts that at least the court deems relevant to those discussions.
The suit arises out of a fire that occurred at the plaintiff's residence on August 11, 1992. The fire was incendiary in origin. The insurance companies began an investigation to determine who might have caused the fire and whether there were grounds to conclude the insureds were responsible for it.
Suit was first commenced by the plaintiff owners against the companies in October 1992. A motion for summary judgment was filed by the insurers claiming there was a failure to comply with conditions precedent to recovery under the policy to (1) provide proof of loss; (2) submit to examinations under oath; (3) provide requested documentation. The motion was withdrawn pursuant to an agreement between the parties for a withdrawal of the motion in exchange for the plaintiff's withdrawal of the action and agreement to submit to an examination under oath. The defendant insurers conducted examinations under oath of Eric and Claudine Bergen and, pursuant to a doctor's orders, two short examinations were conducted of Raymond Bergen but his examination under oath was never completed.
The present suit was brought in August 1993 with the CT Page 12885 operative complaint dated March 1, 1995.
The first argument made by the defendant insurance company is that the plaintiffs are precluded from pursuing their claim for breach of contract because they did not comply with conditions precedent to recovery under the policy.
The defendants allege that Eric Bergen and Raymond Bergen failed to sign the examination under oath transcripts. Secondly the defendants claim that Raymond Bergen failed to complete his examination under oath (examination). Finally, the defendants claim the insureds did not provide them with certain documents that were requested. The "standard" policy has sections regarding coverage, exclusions and conditions precedent to the making and satisfaction of claims under the policy. They, among other things, provide that there will be no coverage for a loss if the insured does not submit to an examination and sign it, conceals or misrepresents any material fact or circumstances regarding the claim or if the insured intentionally causes the loss by his or her own actions or that of his or her agents.
 A.
FAILURE TO SIGN
The defendants first raise the argument that because Raymond and Eric Bergen failed to sign their examinations under oath when requested, a claim cannot be made under the policy. Standard policies require the insured, after a loss, to submit to questioning. The court will briefly discuss the nature and import of such a provision. When an examination under oath provision appears in one of these policies, what are its requirements? A leading case appears to be Watson v. National Surety Corp., 468 N.W.2d 448 import of such a provision. When an examination under oath provision appears in one of these policies, what are its requirements? A leading case appears to be Watson v. National Surety Corp. , 468 N.W.2d 448
(Iowa, 1991). Which at page 451 states:
 The majority of courts have consistently held that failure to submit to questions under oath is a material breach of the policy terms and a condition precedent to CT Page 12886 an insured's recovery under the policy."
The court cites numerous authorities and cases to support this proposition including Appelman, Insurance Law Practice, Vol. 5A § 3549; Couch, Couch on Insurance, 2d. § 49A:361 at p. 759; 44 Am.Jur.2d "Insurance", § 1364 at pp. 290-291; also see 16 ALR 5th 412, "of Insured" at § 2, pp. 432, et seq.; also seeHarris v. Phoenix Ins. Co., 35 Conn. 310, 313 (1868).
But then the Watson court goes on to say, id. at p. 451:
 We have placed the burden to prove compliance with a condition precedent of an insurance policy on the insured. . . . However, proof of strict compliance is not required. . . . Previously we adopted a standard of substantial compliance with conditions precedent of an insurance policy. Hockstra v. Farm Bureau Mutual Ins. Co., 382 N.W.2d 100, 107 (Iowa, 1986)."
Although there appears to be dispute over whether the insured should have the burden of proof with regard to whether there has been compliance with the obligation to submit to an examination under oath, cf. Ausch v. St. Paul Fire MarineInsurance Co., 511 N.Y.S.2d 919, 922 (1987), the "substantial compliance test seems to be generally accepted."
It is true that insurance companies can rightly claim that cooperation clauses requiring examination under oath are "material" and thus that compliance with them are conditions precedent to any claim. That is so because the purpose of such clauses "is to enable the insurer to obtain all knowledge and facts concerning the cause of the fire and the loss involved while the information is fresh in order to protect itself from fraudulent and false claims." Hudson Tire Mart, Inc. v. AetnaCas. Sur. Co., 518 F.2d 671, 674 (CA 2, 1975). But if this rationale is the purpose for regarding these cooperation clauses as material, it would be inappropriate to require something more than substantial compliance with their conditions. The Second Circuit seems to take that view, cf. C-Suzanne Beauty Salon, Ltd.v. General Insurance, 574 F.2d 106, 110 (CA 2, 1978), quoting an earlier New York Court of Appeals case which stated that: "A breach which will defeat a recovery cannot be based upon technical or unimportant omissions or defects in the performance of either party." Porter v. Traders Insurance Co., 58 N.E. 641,642-643 (N.Y. 1900); also see Raymond v. Allstate Ins. Co., CT Page 12887 464 N.Y.S.2d 155, 157 (1983).
Even given the purpose behind requiring examinations under oath as set forth in the Hudson Tire case, it is difficult to see how the mere failure to sign upon request, standing alone, could defeat a claim. The insured would have already submitted to the examination under oath, in fact a transcript would be available which probably could be introduced into evidence in any future litigation. The cooperation clauses in these standard policies were formulated by the insurance companies in some cases decades ago before the adoption of liberal evidentiary and discovery rules or perhaps even the universal mechanical production of transcripts memorializing the actual examinations so perhaps the "signing" was more central to the companies' rightful concerns about protecting themselves. Here it is the court's understanding that Eric and Raymond Bergen did not sign the transcripts of the examination when first requested but only have recently done so.
In light of the previously discussed principles, what do the cases say in situations where the transcript of examination was not signed upon request by the insurer? There are no Connecticut cases on point and not many from anywhere else. But inAgricultural Insurance Co. of Watertown, N.Y. v. Inglehart,386 P.2d 145 (Okla., 1963), the court said that the signing of an examination transcript "was not a condition precedent to the bringing of this action (suit to recover a fire policy). It would not work a forfeiture but it would merely delay the action until the transcript was signed. . . . The trial court proceeded properly in making its order giving plaintiff a reasonable time within which to sign the transcript. After it was signed, defendant (insurer) had no further rights in this regard." Id.
Pp. 147-148. Also see, Pogo Holding Corp. v. New York PropertyIns. Underwriting Association, 422 N.Y.S.2d 123, 124 (1979) where the insured failed to sign and return an Examination Under Oath Transcript at the insurer's request. The court held that rather than have its suit dismissed outright, the insured could cure the breach; cf. Varda, Inc. v. Insurance Company of North America,45 F.3d 634, 639-640 (CA 2, 1995). Under the circumstances of this case and the evidence presented for this motion, the court cannot conclude this action should be dismissed for failure to sign the examination transcripts when first requested. This is especially so since the transcripts have now been signed and there has been no showing of actual prejudice because of the delay in signing the transcripts; cf. C. Suzanne Beauty Salon Ltd. v. GeneralCT Page 12888Insurance, supra, where the trial court gave the insured who had not complied with examination requirements reasonable time to do so and at the same time conditioned renewal of insurer's motion to dismiss upon showing of prejudice. 574 F.2d at p. 111. Thus, the late signing of the transcripts here is found by the court to be "substantial compliance" with that aspect of the examination under oath provision of this standard policy.
 B. FAILURE TO SUBMIT TO SUBSEQUENT EXAMINATIONS
A difficult issue is raised by the fact that Raymond Bergen did not complete his examination under oath but only submitted to two questioning periods. The first two sessions were kept relatively brief because of his medical condition and further examination was not conducted based on a December 12, 1992 letter from a doctor who was treating him and concluded further questioning would have a deleterious effect on his health. (Counsel are aware of the contents of the letter which is attached as Exhibit 1 to the plaintiff's motion in opposition to summary judgment; the court sees no useful purpose in going into the actual contents of the letter from Dr. Sbriglio).
It is clear that refusal to submit to an examination under oath is an absolute bar to recovery under fire insurance policies; as noted, the materiality of these provisions is clear and serves an important function and wilful refusal to submit to an examination bars recovery. Boston Insurance Co. v. Mars,1485 So.2d 718, 719 (Miss. 1903); Bulzomi v. New York Central MutualFire Inc. Co., 459 N.Y.S.2d 861, 862 (1983); Baker v. IndependentFire Insurance Co., 405 SE.2d 778, 779 (1991). It has also been held that there is a bar to recovery where an insured stayed for only part of the examination and left, AMCO Mutual Insurance Co.v. Lamphere, 541 N.W.2d 910, 914 (Iowa, 1995), and that failure to submit to a second examination as agreed upon at the close of the first examination constitutes a failure by the insured to comply with contractual obligations. Catalogue Service of Westchester,Inc. v. Insurance Company of North America, 425 N.Y.S.2d 635. 637 (1980).
There is no claim here that Raymond Bergen's submission to two relatively short examinations could be said to be "substantial compliance" with his contractual obligation to submit to an examination under oath (Watson, supra) or that CT Page 12889 failure to submit to a subsequent examination was only a technical defect (Porter, supra). Here, the insurer did not have a complete examination under oath which the policy explicitly dictates it is entitled to have and, at least for the purposes of this motion, there has been no claim made that the two depositions of Raymond Bergen that were held represented compliance with the examination under oath provision of the policy.
The problem here is that the reason Mr. Bergen did not complete the examination is that he claims it would have been medically inappropriate and dangerous to his health to submit to such an examination. The court concludes that there is a genuine issue of fact as to whether Mr. Bergen had a medically valid reason for failing to submit to further examination. The defendant insurer would be entitled to prove at trial no such valid reason existed and if it establishes this there can be no recovery. The court cannot rule on this issue, however, as a matter of law.
But that conclusion does not obviate the need to address the defendant's argument. Under the authority it cites, especiallyFineberg v. State Farm Fire Casualty Co., 438 SE.2d 754 (N.C., 1994), an insured is not entitled to recover under a fire insurance policy where he or she fails to comply with a policy condition of submission to an examination and there can be no "good cause" based, for example, even on any medical problems that might make attendance at such an examination dangerous to the insurer's health. Despite the defendant's characterization of and attempt to distinguish Fineberg on the facts, it would be difficult to find more sympathetic medical facts which would excuse the insured in that case from attending an examination. He had suffered five previous heart attacks, because of his condition had moved near a hospital and his doctor stated that stress and anxiety could cause a heart attack. This did not deter the North Carolina court from holding the man could not recover on his policy due to failure to submit to an examination under oath.
The insurance company in Fineberg and here would argue that their position is not as draconian as it would first appear. It is based on the premise that prompt and speedy examinations under oath are crucial in the fire insurance industry where a claim is made for loss in a fire that is incendiary in nature. This enables the company to weed out false and fraudulent claims which CT Page 12890 have the general benefit of keeping costs and thus premiums down for all insureds. Cooperation clauses requiring such examinations have been almost universally held not to be unconscionable. See cases collected in 16 ALR5th 412 and 44 Am.Jur.2d, Insurance § 1364. Therefore, the argument goes, the contract provision providing that these examinations be held as a condition precedent to any claim is an important contract right which the company has a right to enforce and cannot be lost because the insured, perhaps even for a good reason, cannot fulfill his or her contract obligation. This reasoning would be in accordance, for example, with § 229 of the Restatement (Second) Contracts. That section reads:
 To the extent that the non-occurrence of a condition would cause disproportionate forfeiture, a court may excuse the non-occurrence of that condition unless its occurrence was a material part of the agreed exchange."
Comment (a) says this section is "intended to deal with a term that does not appear to be unconscionable at the time the contract is made, but that would because of ensuing events, cause forfeiture." The "ensuing event" would be an occurrence preventing the performance of the condition which is not based on fault. But as comment (c) notes, this section "applies only where occurrence of the condition was not a material part of the agreed exchange." No matter how sympathetic a situation might be, courts cannot rewrite contracts or refuse to enforce their terms where the agreed upon terms are not unconscionable, ambiguous, or in violation of public policy. The court in the leading case of Hickman v. Lunden Assurance Corp., et al., 195 p. 45, 49 (Cal., 1920) adopted this reasoning in concluding that a claim of possible self-incrimination would not excuse the insurer's obligation to submit to an examination.
But several cases reject the bright line test adopted inFineberg and suggested in Hickman. In other words, they say that in cases where the insured has not submitted to examination under certain circumstances indicating "good cause" or a reasonable explanation for the failure, recovery will not be barred. PogoHolding Corporation v. N.Y. Property Insurance UnderwritingAssociation, 422 N.Y.S.2d 123, 124 (1979); Lentini Brothers Moving Storage Co., Inc. v. New York Property Insurance UnderwritingAssoc., 440 N.Y.S.2d 174, 175 (1981) (Ct. of App. case citingPogo), cf. Home Insurance Co. v. Olmstead, 355 So.2d 310, 313
CT Page 12891 (Miss., 1978); also see language in Appelman, Insurance Law Practice Vol. 5A, § 3549, pp. 549-550 which says policy requirement of examination under oath is reasonable and insurer would be deprived of valuable right if examination not held thus: "The provision is enforceable against one who refuses withoutcause to submit to an examination." (Emphasis added).
As far as the specific issue of illness is concerned as a reason not to attend an examination, the court could discover only three reported cases besides Fineberg. Home Ins. Co. v.Olmstead, supra implied that inability to submit because of a need to attend to a sick relative could provide cause to not attend an examination but it was then incumbent on the insured to offer to submit to an examination at a later date" —355 So.2d at p. 313 — presumably when the original reason not to submit was no longer operative. In Phillips v. Protection Insurance Co.,14 Mo. 220 (1851), the court reversed a trial court that held the insured had no valid excuse not to attend an examination. There the insured fled his town with his family to avoid an epidemic. The court said if he honestly deemed it necessary for his family's safety to leave his home, such a departure would not forfeit the policy. It was for the jury to determine whether the insured's absence was unreasonably protracted.
Bergeron v. Employers' Fire Insurance Co., 2 P.2d 453 (Cal., 1931) is an interesting case. There the court reversed the trial court which had held that where the insured was ill and unable to attend her examination on specified day and was compelled to move to another city for health reasons, this excused her compliance with the examination requirement. The court said in ruling at page 455:
 Conceding that the illness of this assured excused her attendance for examination at the particular time and place set, the fact remains that the (insurer) appellant has done all that it was required to do to set in motion the policy provisions for an examination of the insured under oath and it was then incumbent upon the insured to endeavor to comply with the contract as soon as she was able to do so by offering to submit to such an examination at a later time. That she was justified by her illness in not submitting to an examination at the place and time named is not a sufficient excuse for not submitting to such an examination at some other time and, if necessary, at CT Page 12892 some other place. No reason appears why she could not have been examined at Ventura, had she been willing. . . . In the absence of facts showing that her disability continued to the time of trial or that in some way the burden of making a new demand was shifted to (insurer) appellant, the (insured) respondents have not brought themselves within the rule."
The unexpressed but fairly clear implication of Bergeron and these other just-discussed cases is that if the reasons for the insured being unable to submit to an examination persists to the time of trial the examination would be excused.
This is a difficult issue to resolve. The approach taken in these just-discussed cases — the court will call it the Bergeron
approach — differs from Fineberg and Hickman and would not appear to be what the Restatement (Second) Contracts § 229 would suggest as a way of analyzing the problem. It can be said, however, that the examination under oath provisions of these standard policies are "material" in only a certain sense. In other words, we do not have a situation where someone has ordered 1,000 widgets equipped with gaskets and they get 1,000 widgets without the attached gaskets making them useless for the intended purpose for which they were bought. The right to examination as such is not a material concern or part of the insurer's bargain, it is material because it is part of a bargained-for discovery process that may lead to the discovery of information barring recovery under a policy because a claim is based on fraud and criminal activity. Thus, from the perspective of setting a fair and adequate premium, which is essential to insurers if risk is to be allocated in a predicable way — predictable to profit margins necessary to sustain their business given possible claims — from this perspective it is difficult to see how insurers will be unfairly prejudiced by not barring claims where an examination cannot be completed due to illness or for other good cause. As long as the burden is placed on the insured to (1) establish good cause; and (2) that the insured must make him- or herself available when the reasons for not taking the examination are no longer operative, then how could the possibility that random, unpredictable situations like this might arise unfairly skewer the premium setting task of insurers? The number of cases where the two mentioned burdens could be met would be minuscule. Where an examination has not been held, it only seems fair to the insurer to follow the approach set forth in Watson v. NationalSurety Corporation, supra, and place the burden on the insured CT Page 12893 that he or she has met the condition of proving that the examination could not be held for good cause. Also, the cases seem to hold that where an examination has been canceled by the insured, the burden is on the insured to submit to a later examination and to offer to do so. Home Insurance Co. v.Olmstead, supra at 355 So.2d p. 313; Gould Investors v. GeneralInsurance Company of Trieste and Venice, 737 F. Sup. 812, 817, footnote 4 (SD NY, 1990). Thus, the insured would have the burden of showing not only that there was illness preventing an examination on a scheduled date but that condition of illness persisted and persists so a later examination could not be held with of course duty of notification to the insurer. If it were to adopt this reasoning, the court cannot decide these issues on the basis of the facts presented and the arguments made in this motion and the motion would have to be denied. Neither based on the above reasoning would it be appropriate — as the defendants suggest — to allow the parties to be placed in the same position they were at the time the first motion for summary judgment was filed in the original action. That would only add a layer of confusion but not help to fairly resolve the competing claims.
However, the court is not convinced that the above reasoning takes sufficient cognizance of the interests of the insurer. Therefore, at the time of trial a more middle position betweenFineberg and the Bergeron line of cases might be appropriate.
Thus, it could be said that even where the insured had good cause for not submitting to an examination because of the importance to the insurer of such an examination and that it is central to its bargained-for agreement, perhaps the insurer should prevail if at that time of trial it can show by a preponderance of the evidence that the inability to conduct the examination of Raymond Bergen resulted in a material breach, i.e., a showing that the insurer has in fact been injured or prejudiced by the inability to conduct the examination. No case specifically adopts this solution but one case does suggest it.Nicolai v. Transcontinental Insurance Co., 378 P.2d 287, 289
(headnote 4) (Wash., 1963), cf. also High Fashions Hair Cuttersv. Commercial Union Insurance, 535 N.Y.S.2d 425, 426 (1988). This approach could be said to pay deference practically if not literary to the concerns and policies expressed in Restatement (Second) Contracts § 229. The examination under oath provision of the policy is a material condition of the policy, but failure to comply with it for good cause would be a material breach only if actual prejudice were to be shown. CT Page 12894
Thus, in the first instance, the insured plaintiff would have the burden of showing good cause excuse for not completing the examination but the insurer would be relieved of liability where no such examination was held if it established such inability to complete the examination actually caused it prejudice.
Whether the Bergeron approach or the just-discussed analysis is adopted will be up to the trial court, but on either theory the motion for summary judgment cannot be granted.
 C.
FAILURE TO PRODUCE DOCUMENTATION
This policy stated the following:
(Standard Policy)
Conditions: Your Duties After Loss.
 In case of loss to which this insurance may apply you shall see that the following duties are performed. . . . D. As often as we reasonably require; . . . (2) provide us with records and documents we request and permit us to make copies;. . . ."
The language in the "Aetna Policy" in relevant part stated in similar language to the standard policy that in the event of loss and as often as reasonably required the insured, after a loss, permit the company to examine the books and records of the insured. Both sides accept and assume the fire was of an incendiary nature.
Not all documents an insured may have in his or her possession are necessarily material and relevant to the proper scope of the insurer's inquiry after a loss — only those that are should be required to be delivered under the terms of the policy. If they are not, recovery should not be allowed under the terms of a policy like this. Cf. Cabe v. Aetna Casualty Surety Co.,544 N.Y.S.2d 862 (1989); Horton v. Allstate, 467 N.E.2d 284, 285
(1984), Ill. ); The Church of St. Matthew v. Aetna Casualty Surety Co., 554 N.Y.S.2d 563, 564 (1989). CT Page 12895
Some policies use specific language with regard to the obligation to produce documents. They talk in terms of producing upon request, for example, "original bills, invoices and other vouchers." Horton v. Allstate Insurance Co., supra; Lee v. StateFarm Fire Casualty Co., 320 S.E.2d 413 (NC, 1984). Others use the general language of this policy — all records and documents requested must be produced. Auerbach v. Home Insurance Co., 494 N.Y.S.2d 738, 739 (1985); DiFrancisco v. Chubb Insurance Co.,662 A.2d 1027, 1029 (NJ, 1995). In the latter type of case, the courts first determine if the document request is material, that is, reasonable given the circumstances of the loss. Arson is a difficult crime to prove. It can only be established by circumstantial evidence and by inquiries into motive. Financial records of the insured are, as the cases say, "patently" relevant to the insurance company's rightful scope of investigation. It is somewhat difficult for the court to ascertain what requested documents have not been delivered to the company but the court assumes the last letter to the insured's lawyer attached to the motion represents outstanding document requests (Exhibit 27). Clearly, many of these items which go directly to the insured's financial condition are material.
The documents requested must be "material information" and it is somewhat difficult for the court to determine conclusively though it perhaps can assume that the some of the information requested relates to companies owned or run by the Bergens. Requests for income records are certainly material inquiries, cf. Halcomev. Cincinatti Insurance Co., 334 S.E.2d 155, 157 (Ga., 1985), and if that is so, demands for bank statements and information about various bank accounts would also seem to be so. Some of the items not turned over to the company appear to go directly to the insured's financial condition and thus appear to represent "material information." The plaintiff insureds argue in their brief that the denial letter of July 1993 the company indicated it "had more than enough information to deny the claim. Since the purpose of disclosure is to provide the defendants (insurers) with the information they need in order to evaluate the claim, they had evaluated the claim, indicating they were denying the claim because of the misrepresentation of the plaintiffs, yet at the same time indicated they do not have the information and documentation to evaluate the claim." (Page 8 of Plaintiff's brief). The court cannot accept this argument. The July 1993 denial letter specifically asserts that one of the reasons for denial of the claim was the failure of the insured to comply with the document request provision of the policies. CT Page 12896
The plaintiffs seem to forget they are suing the insurer for breach of contract and bad faith denial of their claim. An insurance company should not be forced to investigate and ultimately deny a claim at its hazard. Furthermore, there is no evidence here for example that compliance with the document request would have been a futile act. That is, there is no evidence here that the insurer committed an anticipatory breach which would allow a trier of fact to conclude the insurer would not have paid the claim even if the documents were delivered to it. It has been said that "Before renunciation can be treated as an anticipatory breach, there must be a positive and unequivocal manifestation of intention that the party will not render the promised performance when the time fixed in the contract arrives. Horton v. Allstate Insurance Co., supra
at 467 N.E.2d p. 286.
The production of documents material to the rightful request of the insurer investigating an incendiary fire would appear to be then a condition precedent to recovery under a fire insurance policy. The test to be applied is "reasonableness", and in Volume 5A of Insurance Law and Practice, Appelman summarizes the law:
 The insured, to recover, must show at least a reasonable effort to comply with the request made by the company, which question may well become one for jury determination. The failure of the insured to produce any books and inventory required means the failure to produce them if they are in existence, or if they have been lost or destroyed by the negligence or design of the insured. Where such books of account and documents have been destroyed by the fire which burden the insured property, the right to recovery would generally not be lost."
Applying this reasoning, the court in DiFrancisco v. ChubbInsurance Co., supra at 602 A.2d page 1033 found that recovery would be barred where the failure to produce documents was "willful"; also Cabe v. Aetna Casualty Insurance Co., supra
at 544 N.Y.S.2d page 863 found a material breach by the insured in failing to produce documents "without explanation or excuse." But in Hines v. State Farm Fire Casualty, Co., 815 F.2d 648 (CA 11, 1987), the court found the trial court erred in granting summary judgment where the insured failed to produce "material CT Page 12897 information" because the insured "had testified under oath that the income tax returns had been destroyed in the fire and that other material sought by State Farm had been likewise destroyed."Id. p. 652.
Based on the foregoing discussion, although it is a close question for the court, summary judgment would not be appropriate. A little more exactness perhaps should have been provided as to what documents have not been provided, how and whether they contained information not contained in already delivered documents, and how exactly they related to the financial condition of the Bergens. But even beyond that and more importantly, counsel for the insured represent in their brief that some of the documents requested were in fact destroyed in the fire that is the subject of this litigation. As the court will discuss shortly, unsupported verbal statements are not enough to overcome a motion for summary judgment. But the exhibits submitted by the insurer to establish lack of compliance with document requests are directed toward the counsel for the plaintiffs. They obviously represented the clients in gathering and supervising the gathering of the documents that are the subject of the dispute here. They, as officers of the court, are making what the court assumes are good faith representations on matters which may be in their personal knowledge. For these reasons, the court is hesitant to grant the motion based on this ground.
 II.
The motion for summary judgment is also directed toward the count alleging intentional inflict of emotional distress. Four elements are necessary to prove this tort:
 (1) the defendant intended to inflict emotional distress or knew or should have known that emotional distress was a likely result of his or her conduct;
(2) the conduct was extreme and outrageous;
 (3) the defendant's conduct caused the plaintiffs distress; and
 (4) the emotional distress sustained by the plaintiff was severe.
CT Page 12898
See Petyan v. Ellis, 200 Conn. 243, 253 (1986). The defendants in their motion cite several cases from other jurisdictions where claims of intentional infliction of emotional distress against insurance companies have been made and rejected. One case with an extensive discussion is Tobolt v. AllstateInsurance Company, 393 N.E.2d 1171 (Ill., 1979). The cases are fact bound but it is certainly true that merely because an insurance company is involved does not mean that the courts have held that the necessary elements of this tort should be relaxed. Cf. Tobolt v. Allstate Insurance Co., supra; Runions v. Auto-OwnersIns. Co., 495 N.W.2d 166, 168 (Mich., 1992); Bruno v. HomeMutual Ins. Co., 459 N.Y.S.2d 136, 137 (1983).
There are no appellate Connecticut cases discussing the application of this tort against insurance companies. But our state does track the Restatement (Second) Torts § 46 in defining the nature of this type of claim. Comment (d) of that section says the following regarding extreme and outrageous conduct:
 It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by `malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability ha been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"
 The liability clearly does not extent to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities."
The end of the comment does note that it is only where there is a "special relationship" between the parties as stated in § 48 of the Restatement that there can be a recovery for insults which do not amount to "extreme outrage." Section 48 only refers to actions against common carriers and public utilities for the CT Page 12899 actions of their employees. An insurance company might have a special relationship to its insured but it is certainly not a public utility and the "special relationship" referred to in the Restatement cannot be said to be operative for the purposes of this tort where the company and the insured obviously have developed adverse interests and where the insurer is pursuing an investigation into possible fraud after an admittedly incendiary fire.
Turning to the question of the appropriateness of summary judgment motions directed to a tort such as this, the appellate courts have cautioned trial courts against granting such motions where allegations concerning general standards of care are involved, cf. Amendola v. Gervasi, 21 Conn. App. 38 (1990), where the court said in a negligence action the jury should determine the duty of care by examining the particular facts of a case. to the tort now before the court, Judge (now Justice) McDonald, in denying a motion for summary judgment, said: "The question of whether an actor's conduct is sufficiently extreme and outrageous to impose liability is one for the jury to decide." Brown v.Ellis, 40 Conn. Sup. 165, 167-168 (1984). But such cases did not intend to change our rules of practice which, under P.B. § 380, require that the nonmoving party oppose the motion by affidavit or documentation where he or she does not merely rely on the inadequacy of the moving parties representations. Thus, Brown v.Ellis, in this regard must be closely examined. In that case, the plaintiff sued for intentional inflict of emotional distress. He had a great fear of heights and he claimed his supervisor, the defendant, ordered him to do certain work at a great height — the resulting anxiety resulted in the plaintiff's hospitalization. What the court in fact said at page 167 is the following:
 "The plaintiff has alleged in his complaint and by affidavit, that the defendant knew of his disability prior to ordering him to perform the work assignment. For the purpose of summary judgment, such a fact must be viewed as true. . . . The defendant's conduct, therefore, as alleged by the plaintiff, rises to the level necessary for this cause of action."
(Emphasis added).
It was only in this context that the court made its observation that the extremity of the defendants conduct is a question for the jury not a trial court. In other words, the CT Page 12900 party opposing a motion for summary judgment must supply operative facts by affidavit or documentation which raise the claim that there is an issue of fact even in a negligence case or in a case based on applicable standards of conduct given a particular allegation of facts. Our practice is based on federal summary judgment procedure. There it is said that a party trying to avoid summary judgment "must come forward with specific facts indicating there is an issue for trial." Gould Investors v.General Insurance Co. of Trieste Venice, 737 F. Sup. 812, 815
(D.NY 1990); National Union Fire Insurance Co. of Pittsburgh,Pa. v. Turtur, 892 F.2d 199, 203 (CA 2, 1989), C.F. Hartman v.Smith, 158 Conn. 613, 614 (1969). In Farrell v. Farrell,182 Conn. 34, 39 (1980), the court said: "The presence therefore of an alleged adverse claim is not sufficient to defeat a motion for summary judgment. A party must substantiate his (or her) adverse claim by specifically showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue." Also see Kakadelis v. DeFabritis,191 Conn. 276, 280-281 (1983).
With these requirements in mind, the defendants' motion for summary judgment must be discussed. The court will determine the applicability to this motion of the standards and reasoning set forth in Gould Investors and Farrell. To place the discussion in context, the claims made in the revised complaint of March 1, 1995 must be looked at.
The allegations setting forth the intentional infliction of emotional harm state that the plaintiff, Raymond Bergen, has severe emotional problems resulting from, in part, the treatment of a heart condition. Despite its knowledge of this condition, the defendant Standard "intentionally harassed and persecuted" the Bergens. It is further alleged they did this by the threat of claim denial and actual claim denial forcing the plaintiffs to produce many documents which could have been obtained through less stressful means. The coercion also involved forcing the plaintiffs to go through unnecessary examinations under oath. The complaint goes on to say that the plaintiff's doctor advised that he undergo no further examinations. But "despite being informed of this" Standard demanded a release of the plaintiff's psychiatric records and "incredibly" suggested Mr. Bergen be "propped up by medication" to undergo further examination. Standard denied the claim because of the plaintiff's refusal to submit to further examination. Standard further accused the plaintiff during interrogation of starting the fire. As a result CT Page 12901 of the two days of interrogation by counsel for the insurer, Mr. Bergen was subsequently hospitalized with renewed depressive symptoms accompanied by harmful ideation requiring treatment.
Even the facial allegations of the complaint raise questions as to the viability of this count against the defendants. Mere denial of a claim cannot establish such a claim, cf. Runions v.Auto Ins. Co., supra. An incendiary fire was admittedly involved here so that an insurance company has an obligation to its shareholders to vigorously pursue such a claim and a right to do so; there is even a strong public interest in such activity by insurance companies so that rates for hardworking, honest policyholders be kept low as a result of sifting out of fraudulent claims. A company has a right from this perspective and from the very terms of the contract with the insured to hold an examination under oath. Although this court does not necessarily agree with that conclusion, some courts have held a company can deny a claim where an examination could not be held due to serious and verifiable illness, cf. previous discussion and, e.g., Fineberg v. State Farm Fire Casualty Co., supra. How can it then be said that despite the fact that some other courts recognize illness as a valid excuse for not taking an examination, general community standards are so violated by such a position that in Restatement terms it is "outrageous"? Also whatever the appropriate legal decision might be on whether a claim can be denied because an examination could not be taken because of illness, it certainly requires no review of voluminous case law to conclude that wilful failure to submit to an examination on a false claim of illness would permit denial of a claim. How is it then oppressive and outrageous for a company to demand some medical history before giving up a right it deems crucial and which, as the earlier discussion indicated, most courts hold to be material?
A federal case had instructive language as to how allegations of this sort against an insurance company should be handled. In Eckenrode v. Life of America Insurance Co.,470 F.2d 1 (CA 7, 1972), the court said: "settlement tactics may be privileged under circumstances where an insurer has done no more than insist upon his [sic] legal rights in a permissible way.Id. p. 5. The word "privilege" adds an unnecessary layer of complexity but the general thrust of the remark is well taken. Here, the defendants have attached various exhibits to their motion to support their position. A deposition is attached where Mr. Bergen stated under questioning by counsel for the defendant CT Page 12902 insurer that there was no less stressful means by which certain documents could be obtained and that the insurer did not request unnecessary examinations. The defendants point to the fact that they were willing to accommodate the plaintiff's medical condition by having the examinations on alternate days for short time periods; two such sessions were held.
As to the allegations that defense counsel suggested the plaintiff be "propped up" on medication, the defendants have attached a deposition where the plaintiff, himself, explicitly denies this was said to him. Defense counsel in its brief denies that he accused the plaintiff of setting the fire and argues that nothing exists in the record to support the allegation. In fact a deposition is attached in which the plaintiff says defense counsel made no such direct allegation. There is some general reference by the plaintiff in this deposition to the fact that his lawyer and defense counsel engaged in a shouting match over defense counsel's accusation that he, the plaintiff, set the fire but the comment is not particularized. Defense counsel included in their exhibits another deposition in which the plaintiff said that at some point not too long after the fire an insurance "supervisor" said that he and his wife "were going to be the ones that were going to be under investigation." But such a statement standing alone does not qualify as "outrageous" conduct. It might be if it were a bad faith representation based on a nonexistent defense. Cf. Eckenrode v. Life of America Inc. Co.,supra. But the plaintiffs have offered nothing by way of affidavits or documents to allow the court to reach that conclusion. In fact, an analysis of the allegations of the complaint and the exhibits submitted by the defendant present a prima facie or arguable position that the claim of intentional infliction of emotional distress does not lie. In their response, the plaintiffs have presented no exhibits or affidavits supporting their claim. A short paragraph in the opposition brief merely states the file is voluminous and all the evidence cannot be presented short of trial. It is also stated that "without the court seeing the totality of the circumstances it cannot decide this issue" — it "is a question of fact for the jury." In their brief and the conclusion to their brief, the plaintiffs cite Doty v. Mucci, 238 Conn. 800, 805 (1996). InDoty, the court said the party pressing for summary judgment must show the absence of any material fact. But the court went on to say: "and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of material facts." Id. pp. 805-806. Returning to the analysis suggested by CT Page 12903Gould Investors and Farrell, what Doty appears to say is that once by a discussion of the pleadings and the presentation of exhibits and/or affidavits, the moving party presents enough evidence to suggest all or some of the elements of a cause of action have not been met, then the burden shifts to the nonmoving party to counter that position or run the risk of having judgment enter against it. The moving party need not prove a negative or produce all the evidence and depositions so far gathered in the case to establish that there is no genuine issue of material fact. The nonmoving party can attack the particular evidence presented without presenting affidavits or documents of its own, it can present its own affidavits and documents but once an arguable basis is presented for the granting of the motion, what it cannot do is neither of these things and merely state the case is too complicated for treatment by way of summary judgment.
If the foregoing is too linguistic an analysis, the burden shifting functions on a motion for summary judgment can be examined from another perspective. What is permissible is exactly what the defendants did here. They examined the allegations of the complaint and argued as to several of them, even if accepted as true, they would not support the cause of action. Those aspects of the allegations which might support the cause of action they attempted to rebut by exhibits attached to the motion. If the court can conclude, as it does here, that those material allegations have been prima facially rebutted, then a nonmoving party runs the risk of adverse judgment if it has presented nothing by way of exhibits or even argument supporting a claim that a genuine issue of material fact exists on the issue of the viability of those material allegations. Under the circumstances of this motion, the court believes it must grant the defendants' motion for summary judgment on the count alleging intentional infliction of emotional distress.
 III.
The plaintiffs allege in counts three and six that the defendant insurance company acted in bad faith. The thorough brief filed by the defendant sets forth the applicable law in this regard. The plaintiffs agree that it does and the court will simply paraphrase the defendant's statement of the law as to this tort of bad faith. Our state recognizes such a tort, GrindSheets Metal v. Protection Mutual Ins. Co., 34 Conn. Sup. 46, 51
(1977); the basis of such a claim in a case like this is the unreasonable withholding of payment on an insurance policy. The CT Page 12904 plaintiff has to show that it is entitled to recover under the policy before the insurer can be shown to have acted in bad faith. Buckman v. People Express, Inc., 205 Conn. 166, 170
(1987); National Savings Life Ins. Co. v. Dutton,419 So.2d 1357, 1361 (Ala., 1982).
Although the cases say that in every contract of insurance there is a duty to act in good faith and not to unreasonably withhold payment, the insurer does have a right to fairly dispute claim made under the policy. McCauley Enterprises v. NewHampshire Inc. Co., 716 F. Sup. 718, 721 (D.Conn., 1989). The accommodation between these two sometimes competing considerations is the genesis of the tort of bad faith — in other words, to find bad faith, there must be a reckless indifference to the rights of the insured, egregious conduct is required. It has been held, for example, that a finding of bad faith cannot be based on a simple breach of contract, cf. National Security Fire Casualty Co. v. Bowen, 417 So.2d 179 (Ala., 1982). The cases in this area say there must be a conscious act of wrongdoing because of a dishonest purpose, furtive design or ill will.National Savings Life Ins. Co. v. Dutton, supra; Buckman v.People Express, Inc., supra.
The plaintiffs must show that there is no reasonable basis to have denied the claim and that the insurer knew this to be the case; some of the cases cited by the defendant and examined by the court are Friendly Farms v. Reliance Inc. Co., 79 F.3d 541,545 (Cal. 6, 1996); National Savings Life Inc. Co. v. Dutton,supra; Claiborn v. Washington National Ins. Co., 910 P.2d 1046,1051 (Okla., 1996); Bushey v. Allstate Insurance Co.,670 A.2d 807, 810 (Vt., 1995).
The leading case in this area and one of the first cases to recognize the tort of bad faith by an insurer against his or her insurance company for unreasonable and bad faith failure to pay a claim is Gruenberg v. Aetna Insurance Company, 510 P.2d 1032
(Cal., 1973) cited in Grand Sheet Metal Products Co. v.Protection Mutual Insurance Co., supra, the first Connecticut case to recognize the action. Also, the cases which lay out the tort in this context most clearly are National Savings Life Ins.Co. v. Dutton, supra, which in turn relies on an earlier Alabama case: National Savings Life Insurance Co. v. Bowen, supra. The case that most clearly sets forth how a court should procedurally handle a motion for summary judgment made by an insurer against such a claim is Bushey v. Allstate Insurance Co., which at 670 CT Page 12905 A.2d page 810 says:
 . . . there are two elements to the tort — whether the insurer had a reasonable basis to withhold payment and, if not, whether the insurer knew or recklessly disregarded the fact that it had no reasonable basis to withhold payment. Insurers may challenge claims that are fairly debatable. Thus, if a realistic question of liability exists, an insurer may withhold payment while it determines whether there is a reasonable basis for the claim or amount demanded. . . . A motion for summary judgment by an insurer compels a court to consider both elements of the bad-faith tort. If the insurer prevails on either prong, the court must grant the insurer's motion. Even if the court determines that denial of payment was unreasonable as a matter of law, it might still find a genuine issue of material fact as to whether denial was intentional, and thus deny the motion.
(a)
The defendants seem to advance two theories for their position that a reasonable basis existed for them to deny the plaintiffs' claims. At page 34-35 of their initial brief, they set forth what are violations of policy conditions imposed on the plaintiffs' precedent to making a claim. Thus, it is alleged that Raymond and Eric Bergen failed to sign their examination under oath transcripts. Raymond Bergen failed to complete his examination under oath, the insureds concealed and misrepresented material facts, failed to produce requested documents and submitted improper proofs of loss. A bad faith action is a tort action — "reasonable basis" means exactly what it says and broad allegations of failure to comply with contract terms that may be "material" in the context of a contract action won't do to establish "reasonable basis" for a company to deny a claim. There must be some indication as to how failure to comply with these contract obligations by the insured in fact prejudiced the insurer and/or, in the context of other facts and circumstances, provided a "reasonable basis" for the insurer to deny the claim or the amount of the claim. Also, as to some of these allegations, in large part the defendants rely merely on broad allegations and do not descent to specifics — for example, as to how claims were exaggerated, why proofs of loss were "improper." CT Page 12906
But even if the court is incorrect in the foregoing analysis, the nature of the bad faith claim lying in tort and not in contract suggests that a violation of certain policy conditions by the insured such as failure to sign an examination under oath or complete it, failure to produce requested documents or perhaps improper proofs of loss would not necessarily defeat a bad faith claim. Thus, in the leading case of Gruenberg v. AetnaInsurance company, et al., supra, the court rejected the defendant insurance companies' argument that failure of the insured to appear for an examination under oath barred a bad faith claim. The court said at 510 P.2d page 1041:
 Similarly, in the instant case, the existence of a contractual relationship does not insulate defendant insurers from liability that is `ordinarily visited upon tortfeasors' for interfering with a property interest of the insured in receiving the benefits of the agreement. Therefore, even though the duty allegedly assumed by defendant insurers arises from an existing contractual relationship, this duty is independent of the performance of plaintiff's contractual obligations.
 We conclude, therefore, that the duty of good faith and fair dealing on the part of defendant insurance companies is an absolute one. At the same time, we do not say that the parties cannot define, by the terms of the contract, their respective obligations and duties. We say merely that no mater how those duties are stated, the nonperformance by one party of its contractual duties cannot excuse a breach of the duty of good faith and fair dealing by the other party while the contract between them is in effect and not rescinded.
The court does not necessarily adopt the reasoning ofGruenberg but this issue discussed by Gruenberg is a difficult question, neither side has briefed or argued it so the court will not rely on these particular factors referred to by the insurers to conclude that there was a reasonable basis to deny the claim here.
(b)
But the defendant insurers rely on more than a failure to CT Page 12907 comply with policy terms such as signing examinations under oath and not filling out proof of loss forms to argue that they had reasonable basis for their actions. They advance a second theory and argue that based on what they claim are "uncontested facts" — the incendiary nature of the fire, plaintiffs' financial motive to set it, and their opportunity to do so — there is no doubt that there was a reasonable basis to deny the claim. In a footnote, the insurers argue further that the "defendants need not prove that they were correct in their assumptions. All that the defendants are required to prove to succeed on the Motion for Summary Judgment, is that there existed a reasonable basis to deny the claim." (Footnote 1, page 13 of 7/23/97 reply brief). But the fact that the insurer need not in fact establish that the insured for example set a fire for which the insured later makes claim does not mean that the company can merely provide a catalogue of the factors on which it based the denial of the claim as a stand-in for a conclusion that there was a "reasonable basis" to deny the claim. The insurer need not establish that the insured started the fire but it must refer to the basis on which it concluded the facts it relied on to deny coverage gave it a reasonable basis to do so.
In that context, if the insurer's actions in denying a claim are reasonable because the claim was fairly debatable as a matter of law, summary judgment for the insurer should be granted without reaching the question of the insurer's knowledge of whether it had a reasonable basis to deny the claim. Bushey v.Allstate Insurance Co., supra, 670 A.2d at page 810. In some cases, this is not a difficult conclusion to reach. Thus, an insurer was held entitled to summary judgment because no genuine issue of material fact existed regarding the company's legitimate dispute of a claim where the insured had misrepresented her medical history. Oulds v. Principal Mutual Life Co.,6 F.3d 1431, 1443 (CA 10, 1993). In Bushey itself there was credible medical support for the insurer's position that the insured was not injured as claimed by him and his doctors.670 A.2d at page 810. Also, where there is a substantial issue as to coverage there can be no bad faith issue for a jury to decide.Calenda v. AllState Insurance Co., 518 a.2d 624, 629 (R.I., 1986).
The question is much more difficult as to the propriety of granting a summary judgment motion on the grounds of reasonable basis where there is denial under a fire insurance policy because of the alleged involvement of the insured in setting the fire. CT Page 12908 Arson cases are difficult to prove and almost always rely on circumstantial evidence. Certainly the fact that a fire is incendiary in nature cannot provide a reasonable basis — standing alone — to deny coverage. That would be the basis for the company to start an investigation not a reason to deny coverage. Otherwise, premiums on fire policies would be little more than windfalls. The fact that an insured might have a motive to start a fire coupled with the fact of an incendiary fire is of more relevance. But the motive evidence here is somewhat scanty. The fire occurred in August of 1992 and the defendants cite various facts indicating the plaintiffs had large expenses and limited cash flow with mortgages on several properties. The plaintiffs were about $26,000 behind on mortgage payments, had "difficulty" meeting other expenses — whatever that really means — and a $40,000 1989 tax lien was placed on their property. Their income was down for the first six months of 1992 and from this income there was no way the Bergens could pay their mortgages including the $39,000 on the property which was destroyed by fire. The financial records presented only covers a period of 18 months before the fire. The court is not aware of how much the subject property was insured for and how receipt of insurance proceeds for such a loss would have materially improved these people's general financial situation. The plaintiffs owned other property besides the property on which the claim was made and they were mortgaged but there is no indication of the equity in these properties or whether the plaintiffs owned other assets. It is true that on this claim as on the intentional infliction of emotional distress claim the plaintiffs have supplied little or nothing by way of affidavits or documentation to controvert the defendants' general description of their financial condition. But it is only fair to shift the burden of persuasion back to the nonmoving party as the court did in the intentional infliction of emotional distress claim when specific allegations are made that would bar the establishment of particular elements of the tort claim as opposed to doing so in a situation where broad claims of financial condition are made that on their face are not complete or necessarily conclusive.
The court has even more difficulty with the opportunity evidence — the opportunity the plaintiffs had to set the fire. The opportunity evidence is partly conjectural and is difficult to apply in this summary judgment context because it is undisputed that the owners of the property that is the subject of this claim, Raymond and Claudine Bergen, were several thousand miles away when the fire started. An employee of Bergen has been CT Page 12909 indicted for the fire but this is a bald statement in the defendants' brief and the reasons why he was indicted are not shared with the court. The defendants' brief states the testimony regarding the conduct of Eric and Philip Bergen on the date of the fire was "inconsistent at best" but what was that testimony and how was it inconsistent? The Bergen's car was last seen at the property at seven p. m. the night of the fire but when was the fire set and what is the incriminating connection between Raymond and Claudine Bergen and Philip Bergen except that they share a last name? The defendants' brief goes on to say that all of the Bergen cars were removed from the premises prior to the ire but who says this, how many cars are referred to, what were they worth, where were they removed? Also, the Bergens after all were on vacation apparently in Hawaii which also seems to belie any picture of dire financial circumstances.
On the basis of the record presented, and only on that basis, the court is reluctant to conclude and will not conclude that a reasonable basis has been established for the denial of the insureds' claim at least for summary judgment purposes.
That being the focus of the defendants' motion on this bad faith allegation, the court need not and cannot on the basis of this record deal with the second prong of the Bushey v. AllstateInsurance Co., supra, test — whether the insurer intentionally or recklessly disregarded the fact that it had no reasonable basis to withhold payment on the claim. In other words, the court only decides that the insurer has not set forth sufficient facts on which the court can conclude for summary judgment purposes that there was a reasonable basis to deny the claim — that was the only factor put in contention by the insurer. The defendant companies did not argue that even if there was no such reasonable basis the companies did not intentionally or recklessly disregard such fact.
The motion for summary judgment is therefore denied as to the bad faith claim. The court grants the motion only as to all claims of intentional infliction of emotional distress.
Corradino, J.