# Timothy Bushey v. Allstate Insurance Company

[670 A.2d 807]

No. 95-069

Present: **Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed October 27, 1995

Motion for Reargument Denied December 5, 1995

*Gareth H. Caldbeck* of *Caldbeck & Schweitzer,* Shelburne, for Plaintiff-Appellant.

*Bret P. Powell* and *Christopher O'Brien* of *Wilson Powell Lang & Faris,* Burlington, for Defendant-Appellee.

**Gibson, J.** Plaintiff sued his insurer, defendant Allstate Insurance Company, for bad-faith failure to pay his underinsured motorist claim, following an automobile accident in which the other driver's insurance covered only part of plaintiff's damages. He appeals from an order of the Chittenden Superior Court granting defendant's summary judgment motion. We affirm.

Plaintiff was in a two-car accident in December 1989. The other driver's insurance company paid plaintiff its policy limit of $20,000 in settlement of his claim, to which defendant, plaintiff's insurer, consented. Defendant's insurance policy covered plaintiff for underinsured motorist (UIM) claims, with a limit of $100,000, and provided that if plaintiff and defendant could not agree on the amount of damages, either party had the right to demand arbitration. The policy also provided medical payments coverage with a limit of $10,000.

Following the accident, plaintiff did not immediately seek medical attention, but five days thereafter went to a chiropractor, who noted that plaintiff's symptoms were severe neck and back pain and headaches. In January 1990, the chiropractor noted that plaintiff was 50% improved and that muscle strength in the upper extremities was normal. Later that month, he reported an 80% improvement over plaintiff's original condition and found muscle strength in the upper extremities was normal and symmetrical.

Plaintiff continued to experience pain and reported his claim to defendant, which began paying medical bills under the medical payments coverage. The intake report in defendant's file described the injury as "whiplash." Next, plaintiff sought treatment from a second chiropractor, who referred him to an orthopedist, who at first suspected that plaintiff's pain resulted from a low-grade separated

shoulder, but thereafter suspected a more serious, partial tear of the rotator cuff. Several tests, including one surgical procedure, failed to reveal the existence of a rotator cuff tear, but a surgical procedure in January 1991 detected a one centimeter tear.

In April 1991, plaintiff's counsel advised defendant that plaintiff's injuries were not just the "whiplash" first experienced, but that plaintiff's rotator cuff had been torn in the accident. In June 1991, counsel advised defendant that plaintiff sought the UIM policy limit of $100,000, including compensation for medical expenses, pain and loss of income. In August, defendant requested copies of plaintiff's medical bills and tax returns, and informed plaintiff's counsel that it wanted to have an independent medical examination performed on plaintiff. Although plaintiff's doctors were unanimous that the rotator cuff tear and the resultant pain were related to the accident, defendant's medical expert, who examined plaintiff in October 1991, disagreed.

In November 1991, defendant offered plaintiff $5000 over and above the $10,000 medical payments. Plaintiff rejected the offer and filed suit in December 1991 for full policy coverage, alleging that defendant had denied his claim in bad faith. Defendant moved to compel arbitration in accordance with the policy terms, and the trial court ultimately granted this motion. The arbitrators issued their award in May 1993, which, after offsets for the liability payment of $20,000, medical payments of about $10,000, and an advance under the UIM coverage for medical bills requested by plaintiff, resulted in a net award to plaintiff of $67,361.44. Defendant paid the full amount of the award within a month of the arbitration decision.

Thereafter, defendant moved for summary judgment as to plaintiff's bad-faith claim, which the trial court granted, concluding that the question of defendant's liability had been "fairly debatable" within the meaning of the test set forth in *Booska v. Hubbard Insurance Agency, Inc.*, 160 Vt. 305, 312, 627 A.2d 333, 337 (1993), and that defendant had not acted in bad faith. The court also concluded that because there had been no bad faith, there was no cause of action for intentionally inflicted mental distress. The present appeal followed.

## I. Recognition of Bad-Faith Cause of Action

Although we have long recognized a cause of action against an insurance company for bad faith in handling third-party claims brought against its insured, see *Myers v. Ambassador Ins. Co.*, 146 Vt. 552, 555, 508 A.2d 689, 690 (1986); *Johnson v. Hardware Mutual*

*Casualty Co.*, 109 Vt. 481, 490-91, 1 A.2d 817, 820 (1938), we have not explicitly recognized a cause of action for bad-faith failure of an insurer to pay a claim filed by its insured (sometimes called a "first-party claim"). See *Booska*, 160 Vt. at 312, 627 A.2d at 336. We now hold that such an action lies in Vermont, within the parameters noted in *Booska*. To establish a claim for bad faith, a plaintiff must show that (1) the insurance company had no reasonable basis to deny benefits of the policy, and (2) the company knew or recklessly disregarded the fact that no reasonable basis existed for denying the claim. See *id.* An insurance company may challenge claims that are "'fairly debatable'" and "'will be found liable only where it has intentionally denied (or failed to process or pay) a claim without a reasonable basis.'" *Id.* (quoting *Anderson v. Continental Ins. Co.*, 271 N.W.2d 368, 377 (Wis. 1978)). Thus, the rule limits recovery to instances in which an insurer not only errs in denying coverage but does so unreasonably.

A majority of jurisdictions recognize the first-party, bad-faith tort. See *Dolan v. Aid Ins. Co.*, 431 N.W.2d 790, 791 n.1 (Iowa 1988) (listing cases). Reasons cited in support thereof include the superior bargaining position of insurers, the vulnerability of insureds, the public interest nature of the insurance industry, the similarity to the tort of bad faith in claims involving a third-party tortfeasor's insurer, and the failure of other penalties — such as interest that must be remitted when claims are ultimately paid — to discourage bad-faith conduct by insurers. See *id.* at 791-92; Phelan, *The First Party Dilemma: Bad Faith or Bad Business?*, 34 Drake L. Rev. 1031, 1035-37 (1985-86). We find these reasons persuasive.

A minority of jurisdictions have expressly declined to recognize a first-party, bad-faith tort, citing, among other reasons, that the insurance industry is like any other commercial enterprise and not imbued with a particular public interest, that many states have statutory remedies that are exclusive and eliminate the need for other remedies, that traditional compensatory damages for breach of contract are adequate, and that the tort of bad faith is no different from other torts, such as outrage and intentional infliction of emotional distress, which eliminate any need for the bad-faith tort remedy. See *Dolan*, 431 N.W.2d at 792; Phelan, *supra*, at 1037-38. Under the majority rule, however, no insurer will be liable for a good-faith error in denying or delaying a claim, and consumers will have a remedy whenever a company's conduct evinces a conscious disregard for its duty under the policy or such recklessness in

evaluating the facts and circumstances of a claim that it never gives the claim due and fair consideration.

## II. Summary Judgment Analysis of the Bad-Faith Claim

Plaintiff claims there are genuine issues of fact disputed by the parties, and therefore, the court erred in granting summary judgment to defendant.

Summary judgment under V.R.C.P. 56 should be granted only in the absence of genuine issues of material fact, when all allegations in opposition to the motion supported by evidence are regarded as true, and the benefit of all reasonable inferences is given to the party opposing the motion. *Messier v. Metropolitan Life Ins. Co.*, 154 Vt. 406, 409, 578 A.2d 98, 99-100 (1990). As stated above, there are two elements to the tort — whether the insurer had a reasonable basis to withhold payment and, if not, whether the insurer knew or recklessly disregarded the fact that it had no reasonable basis to withhold payment. Insurers may challenge claims that are fairly debatable. Thus, if a realistic question of liability exists, an insurer may withhold payment while it determines whether there is a reasonable basis for the claim or the amount demanded. See *Wilson v. State Farm Mutual Auto. Ins. Co.*, 795 F. Supp. 1077, 1080 (D. Wyo. 1992); *Dolan*, 431 N.W.2d at 794; *Anderson*, 271 N.W.2d at 377.

■■ A motion for summary judgment by an insurer compels a court to consider both elements of the bad-faith tort. If the insurer prevails on either prong, the court must grant the insurer's motion. Even if the court determines that denial of payment was unreasonable as a matter of law, it might still find a genuine issue of material fact as to whether denial was intentional, and thus deny the motion. See *Washington v. Group Hospitalization, Inc.*, 585 F. Supp. 517, 520-21 (D.D.C. 1984) (insurer's summary judgment motion denied where defendants conceded that their denial of claim was mistaken, and there was genuine issue of material fact as to whether defendants knew or recklessly disregarded their lack of basis for denial of claim). When a court decides that an insurer's actions were reasonable because the claim was fairly debatable as a matter of law, it must grant the summary judgment motion without reaching the question of the insurer's knowledge. See *Oulds v. Principal Mut. Life Ins. Co.*, 6 F.3d 1431, 1445 (10th Cir. 1993) (insurer entitled to summary judgment because no genuine issue of material fact regarding insurer's legitimate dispute about insured's claim where insured had misrep-

resented medical history on insurance application); *Wilson*, 795 F. Supp. at 1081 (on claim of bad faith, insurer was entitled to summary judgment where claims for medical payments were "fairly debatable"); *Calenda v. Allstate Ins. Co.*, 518 A.2d 624, 628-29 (R.I. 1986) (when there was substantial and genuine question with respect to coverage, there can be no bad-faith issue for jury to decide); see also *Dunn v. State Farm Fire & Casualty Co.*, 927 F.2d 869, 873 (5th Cir. 1991) (whether insurer had arguable reason to deny insured's claim was issue of law for court; because insured would not have been entitled to directed verdict on contract claim, insurer clearly had arguable reasons to deny claim).

In the present case, the court determined that plaintiff's claim was fairly debatable because numerous tests conducted over an extended period of time had failed to show the rotator cuff tear, which was not confirmed until more than a year after the accident, and defendant was entitled to investigate (1) whether the torn rotator cuff was an after-acquired injury received during a surgical procedure performed in 1990 or an injury caused by the auto accident, (2) the extent of the injury, and (3) whether the amounts already received by plaintiff had adequately compensated him. The court's ruling was correct, particularly in light of plaintiff's demand for payment of the full policy amount of $100,000 and the doubt as to the nature and origin of plaintiff's shoulder injury.

■ Plaintiff emphasizes evidence he calls "voluminous," indicating that, whether or not the extent of his injuries was clear from the outset, by August 1991 defendant was aware that both of plaintiff's surgeons, who had been treating him for approximately one year and had performed surgery on him, were of the opinion that the shoulder injury resulted from the accident. The evidence, however, supports the judgment that there was a valid reason for an independent medical examination by defendant, whose expert reported that he was unable to discern a clear cause-and-effect relationship between the auto accident and the rotator cuff tear, and a fair dispute about the amount of plaintiff's damages. The court properly concluded that plaintiff's claim was fairly debatable as a matter of law. Consequently, there was no occasion for the court to consider defendant's possible bad faith.

■ Finally, plaintiff argues that the court should not have granted defendant's summary judgment motion when the parties had not completed discovery and further discovery might have provided

relevant information, including in-house memoranda that defendant had been ordered to produce. Rule 56 does not require that summary judgment motion decisions await completion of discovery, and to so require would defeat the purpose of the rule. See *Pizza Management, Inc. v. Pizza Hut, Inc.*, 737 F. Supp. 1154, 1169 (D. Kan. 1990) (requiring that summary judgment await completion of discovery frustrates its usefulness as tool to weed out claims that do not merit trial). The court need only permit an adequate time for discovery. *Poplaski v. Lamphere*, 152 Vt. 251, 254, 565 A.2d 1326, 1329 (1989).

In the instant case, plaintiff's discovery had produced a substantial amount of information: the claim file, medical records relied on by the insurer, depositions of defendant's personnel and its legal and medical experts, and responses to written interrogatories. Moreover, plaintiff acknowledges that the memoranda he sought were relevant to defendant's intent, an issue the trial court did not need to address because it determined that no genuine issue of fact existed regarding the fairly debatable nature of plaintiff's insurance claim. There was no error.

Plaintiff's other arguments are without merit.

*Affirmed.*