**Kevin BUOTE and Kimberly Buote, Plaintiffs,**

v.

**VERIZON NEW ENGLAND and Bell Atlantic Communications, Inc., Defendants.**

**No. 2:00–CV–475.**

United States District Court, D. Vermont.

March 7, 2003.

Thomas C. Bixby, Esq., McCarthy Law Offices, Brattleboro, VT, for Plaintiffs.

Potter Stewart, Jr., Esq., Potter Stewart Law Offices, P.C., Brattleboro, VT, for Defendants.

### OPINION AND ORDER

SESSIONS, Chief Judge.

This dispute involves the alleged bad faith handling of Kevin Buote's ("Buote") workers' compensation claim by Verizon New England and Bell Atlantic Communications, Inc., (collectively "Verizon").[1] Kim Buote has filed a loss of consortium

claim related to the alleged insurance bad faith. Both sides have moved for summary judgment on Buote's insurance bad faith claim. For the reasons described below, the Court **DENIES** the Buotes' motion and supplemental motion for summary judgment (Docs.67, 79), and **GRANTS and DENIES in part** Verizon's motion for summary judgment (Doc. 74).

### I. Background

Unless otherwise noted, the following facts are undisputed by the parties. In October 1999 Buote, then a splice technician for Verizon, was injured in the course of his employment when he fell while servicing a phone line. Buote's head struck rocks and he sustained severe fractures of the right orbital and facial bones, including the right frontal sinus. After reconstructive surgery, he regained 90% of the lost sensation in the right side of his face. He returned to work with Verizon as a splice technician in January 1998.

In late 1999 Buote suffered a recurrence of his injury and could not perform the requirements of the splice technician job.[2] Buote's symptoms included intermittent dizziness and balance problems, facial numbness and headaches on the right side of his head, and vision problems: graying out, blurriness, and reduced peripheral vision in his right eye. On January 13, 2000 he was examined by Dr. John Leppman, an internal medicine specialist. Dr. Leppman's notes from the visit state that "[c]ertainly scarring from [Buote's] previous injury and surgery could be causing" his

---

**1.** Verizon is financially responsible for payment of workers' compensation claims against it because it acts as a self-insurer. *See* Vt. Stat. Ann. tit. 21, § 687 (Lexis Supp. 2002).

**2.** Whether Buote's symptoms were a recurrence of the previous injury was initially disputed by Verizon. As discussed below, Verizon eventually settled the claim and paid Buote workers' compensation benefits. At the heart of this dispute is whether Verizon's delay in providing these benefits and its failure to provide re-employment or retraining constitutes insurance bad faith.

sinus problems and other symptoms. Leppman Notes of 1/13/00 (Doc. 74, Ex. A). On January 19, 2000 Buote underwent a CT scan which identified "surgically old bony trauma around the right orbit" but did not indicate significant sinusitis. Leppman Notes of 2/24/00. On January 24, 2000, after reviewing the CT scan results, Dr. Leppman recommended that Buote not climb telephone poles "until the matter is better worked out." *Id.*

On January 20, 2000, Buote spoke with Verizon's workers' compensation adjuster, Steve Gottsche. Gottsche's notes indicate that Buote was not sure whether his symptoms were related to the 1997 injury and that Gottsche informed Buote that "it was a medical call and that his dr would have to opine." Gottsche Notes of 1/21/00 (Doc. 74, Ex. E). According to the same notes, Gottsche spoke with Dr. Leppman's office the next day and was told that Buote was suffering from sinusitis and that Dr. Leppman's notes did not discuss the issue of work-relatedness. Buote maintains that on or about January 27, 2000 he informed his supervisor and Gottsche that he and Dr. Leppman believed the symptoms represented a recurrence of the 1997 injury. Buote Aff., ¶¶ 1, 4 (Doc. 36, Ex. 1).

Gottsche did not place Buote on workers' compensation, but on temporary disability pursuant to Verizon's Sickness and Accident Disability Plan ("Disability Plan") administered by Aetna Life Insurance Company ("Aetna"). Under the Disability Plan Buote was entitled to fewer benefits from Verizon than he would have received through workers' compensation.

Over the next months Buote's symptoms persisted. Dr. Leppman arranged for him to be seen by an ear, nose, and throat specialist and an ophthalmologist. These specialists were unable to pinpoint the cause of Buote's symptoms. An MRI ruled out posttraumatic vascular malformation but suggested right maxillary sinusitis. Buote was twice treated for sinusitis with antibiotics, once at a local hospital and once by the ear, nose, and throat specialist, but his symptoms did not abate. The ophthalmologist could not connect Buote's visual graying out episodes to the facial injury and suggested that problem might be caused by "an unusual form of migraine presentation." Leppman Notes of 3/8/00 (Doc. 85, Ex. D). Migraine medication, however, did not significantly reduce his vision problems. Throughout this time, Dr. Leppman continued to advise Buote not to resume his regular work responsibilities and to opine that his symptoms were related to the 1997 facial bone injury. Also during this time, Buote repeatedly contacted his supervisor, his union, and Aetna about his eligibility for workers' compensation, as opposed to disability benefits.

At the end of March, Gottsche reevaluated whether Buote should receive workers' compensation. Gottsche's notes from March 30, 2000 state that after reviewing Buote's medical records he felt that Buote's symptoms were work-related. Gottsche Notes of 3/30/00. However, his notes also state that Barbara Drain, the Aetna nurse case manager handling Buote's disability payments, did not agree with this evaluation. According to Gottsche's notes, Drain told him that "she speaks with the attending physician, Dr. Leppman, every week, and that he insists it's not [workers' compensation]." *Id.* In her deposition Drain denied making such a statement. Moreover, her notes from the same time period state that Dr. Leppman in fact felt that the symptoms were work-related. Drain Notes of 3/3/00, 4/13/00 (Doc. 74, Ex. F).

Gottsche's March 30, 2000 notes indicate that he then spoke at length with Dr. Leppman about Buote's symptoms and

that Dr. Leppman could not "state that he feels this present situation relates to the old work injury." Gottsche Notes of 3/30/00. As a result, Gottsche determined that Buote should remain on disability pursuant to the Disability Plan. However, Dr. Leppman followed up with an April 5, 2000 fax in which he stated that "[i]t is clear to me, as well as to the consultants who have seen [Buote], that his symptoms are related to his injury even though there is nothing seriously out of place there." Leppman Fax of 4/5/00 (Doc. 68, Ex. 7). Dr. Leppman acknowledged that, although Buote's previous injury had left scarring under the surface of his face, the consultations had not identified any "serious structural or functional defect in his eye, sinuses, or adjacent bones, nerves, or muscles." *Id.* He also noted that the connection to the 1997 injury "could be in part psychological," and that "[s]ome combination of physical and psychological factors is part of just about every pain problem." *Id.* He concluded that Buote "would not be having the symptoms he is now experiencing if he had not had the injury." *Id.*

Despite Dr. Leppman's fax, Buote continued to receive benefits through the Disability Plan, not through workers' compensation. It is not clear whether at any point during the winter or spring of 2000 Gottsche notified the Vermont Department of Labor and Industry ("DLI") of Buote's recurrence claim or whether he provided DLI or Buote a written explanation of the denial of workers' compensation benefits, as required by Vermont's Workers' Compensation and Occupational Disease Rules ("workers' compensation rules"). Rule

3(a)(1), (c), (e) (eff.Sept. 13, 1999).[3] During this time, Buote's disability payments were frequently delayed due to various administrative problems.

In May 2000 Verizon's Medical Director, Dr. Sadiqali, reviewed Buote's case and recommended an independent medical examination by a head and neck surgeon. Dr. Sadiqali told Gottsche that she did not agree with Dr. Leppman that the symptoms were related to the previous injury because there were no objective findings of such a link and because she felt Dr. Leppman, as an internal medicine specialist, was not qualified to evaluate Buote's case. Before the independent medical examination was undertaken, however, Verizon stopped Buote's payments under the Disability Plan. The denial of disability certification was prompted by the June 6, 2000 conclusion of Aetna's Medical Director, Dr. Joel Hellman, that Buote had failed to provide any objective findings to validate his subjective complaints.

On June 22, 2000, an independent medical evaluation was conducted by Dr. Marshall Zamansky, an ear, nose, and throat specialist. Dr. Zamansky found no evidence of acute sinus infection nor any evidence that Buote's facial fractures were causing physical or functional difficulty. He detected hearing loss, however, and stated that "it is within the realm of medical certainty" that the hearing loss was caused by the 1997 fall. Zamansky Report of 6/22/00 (Doc. 74, Ex. A). Dr. Zamansky concluded that Buote's unsteadiness, dizziness, and blurred vision could be related to injury to his ear mechanism, neck, or back.

---

**3.** All citations to the workers' compensation rules are to the rules as they existed at the time of Buote's recurrence. *See Montgomery v. Brinver Corp.,* 142 Vt. 461, 463, 457 A.2d 644, 645 (1983) ("The right to compensation for an injury under the [Workers'] Compensation Act is governed by the law in force at the time of occurrence of such injury."). Renumbering and limited amendment of the text of some of the relevant rules has since occurred. The current version of the rules is located at Vt.Code R. 24 010 003–1 to 24 010 003–28 (2002).

Based on the timing of occurrence of these symptoms he concluded that they appeared to be causally related to the 1997 fall, although additional studies were needed to render a medical opinion.

On July 18, 2000, after an informal telephone conference [4] with the parties, DLI workers' compensation specialist, Janet LaPerle, concluded that the medical evidence "clearly reflected" that Buote's symptoms were related to his 1997 injury and that workers' compensation benefits were due as of January 20, 2000. LaPerle Letter of 7/18/00 (Doc. 74, Ex. KI). LaPerle informally ordered Verizon to provide workers' compensation benefits to Buote immediately, within ten days of the phone conference.

On August 4, however, Buote's attorney wrote Gottsche that Buote had not yet received a check from Verizon. Eventually, after a second letter from his attorney, Buote received the first check at the end of August. Throughout the summer and fall of 2000 Verizon's payment of workers' compensation benefits to Buote and his medical providers was frequently delayed and the amounts paid were often incorrect. These failings were eventually addressed at a second informal telephone conference with LaPerle on December 7, 2000. However, wage and medical provider payment delays and inaccuracies continued after that meeting into February of 2001.

On January 10, 2001, LaPerle recommended to DLI Workers' Compensation Commissioner Laura Collins that she award Buote attorney's fees pursuant to Rule 10 of the workers' compensation rules. Rule 10 permits an award of attor-

ney's fees after an informal hearing where the employer caused undue delay in adjusting the claim, denied the claim without reasonable basis, or engaged in misconduct or neglect. Rule 10(a)(3)(i)-(iii). In an internal memorandum LaPerle stated that she felt attorney's fees were owed

> in light of the lack of cooperation from Verizon and especially Steve Gottsche. I do not believe he has properly adjusted this claim or any other claim for that matter. The claimant has suffered undue delays on account of Mr. Gottsche . . . . [This lack of cooperation] appears to be Mr. Gottsche's M.O. on most if not all claims he handles.

LaPerle Memorandum of 1/10/01 (Doc. 68, Ex. 11). On April 17, 2001, Collins determined that Verizon should pay Buote's attorney's fees incurred between June 2000 and the winter of 2001. This informal order was "[b]ased upon [Verizon's] unreasonable denial of reinstatement [of workers' compensation benefits] after Dr. Leppman's letter of April 5, 2000." Collins Letter of 4/17/01 (Doc. 68, Ex. 4). It was also based on the payment delays following the July 18, 2000 phone conference.

In December 2000 the parties agreed to follow Dr. Leppman's determination that Buote's symptoms represented a 5% impairment of the whole person for disability assessment purposes. The following February Buote received a lump sum payment for this permanent partial disability. After the January 2000 recurrence, Buote was never re-employed by Verizon. In May 2001 Verizon offered Buote vocational rehabilitation benefits which he declined

---

4. Workers' compensation rules permit DLI to conduct such a conference to attempt to resolve a workers' compensation claim prior to placing the claim on the formal hearing docket. Rule 6(a), (c). If the evidence produced at the conference does not "reasonably sup-

port denial of compensation," DLI has the authority to issue an interim order requiring payments to be made. Rule 6(d). In this case an interim order was not necessary as Verizon apparently agreed to comply with LaPerle's informal order.

because he had taken a job with a different employer outside of Vermont. Currently Verizon has paid Buote all monetary benefits due under the Vermont Workers' Compensation Act ("VWCA").

The Buotes allege that Verizon's failure to reinstate Buote's workers' compensation benefits during the winter and spring of 2000, to make payments promptly and accurately, to re-employ him at Verizon, and to provide him vocational rehabilitation promptly caused their family economic hardship and emotional distress. The Buotes were forced to seek financial assistance from family members and the government and meals from food shelves and a homeless shelter. They were unable to make rent payments and were evicted in June 2000. As a result, the Buotes and their three young children moved into a hotel for a few weeks and then a small trailer without plumbing for approximately a month and a half. Verizon's failure to reassign Buote within the company and its delay in offering him vocational rehabilitation forced him to take a lower paying, out-of-state job. As a result of these financial stresses and his family's homelessness, Buote began experiencing panic attacks. He has been diagnosed with anxiety disorder.

## II. Legal Standard

Summary judgment should be granted when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is material when it affects the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine issue as to a material fact exists when the evidence requires a factfinder to resolve the parties' differing versions of the truth at trial. *Id.* at 249, 106 S.Ct. 2505 (citing

*First Nat'l Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 288–89, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)).

The moving party has the initial burden of coming forward with those parts of the record it feels demonstrate an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The non-moving party must then "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). When evaluating a motion for summary judgment, a court is required to view the evidence in the light most favorable to the nonmoving party. *Dister v. Cont'l Group, Inc.,* 859 F.2d 1108, 1114 (2d Cir.1988).

When considering two opposing motions for summary judgment, a court follows the same standard, evaluating each motion on its own merits and drawing all reasonable inferences against the party whose motion is under consideration. *Morales v. Quintel Entm't, Inc.* 249 F.3d 115, 121 (2d Cir.2001) (citing *Schwabenbauer v. Bd. of Educ.,* 667 F.2d 305, 314 (2d Cir.1981)). In doing so a court need not grant either party's motion. *Id.*

## III. Discussion

### A. Preliminary Issues

Before turning to the merits, the Court will address a number of preliminary issues raised by the parties. Verizon argues that Buote may not pursue (1) the delay in receiving vocational rehabilitation benefits because Buote failed to exhaust his administrative remedies with DLI, and (2) Verizon's failure to provide a pay differential along with his weekly workers' compensation payments because such a claim is preempted by § 514(a) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1144(a). Buote argues that res judicata and collateral estoppel preclude Verizon from arguing that

it did not act in bad faith in handling his workers' compensation claim.

### 1. Exhaustion of Administrative Remedies

■ An employee is entitled to vocational rehabilitation benefits under the VWCA when the work-related injury prevents the employee from performing work for which he or she has previous training or experience. Vt. Stat. Ann. tit. 21, § 641(a) (Lexis Supp.2002). These benefits include "retraining and job placement, as may be reasonably necessary to restore the employee to suitable employment." *Id.* Buote argues that Verizon failed to meet its obligation under the workers' compensation rules to make a referral to a rehabilitation counselor within the required time period. Rule 28(a) (referral to be made within 15 days after it is reasonably apparent that claimant may be eligible for vocational rehabilitation services). However, when Verizon failed to do so, Buote had the right to seek a hearing or informal conference with DLI, Rule 33, a remedy he never pursued.

Although the record indicates some discussion of vocational rehabilitation benefits during the December 7, 2000 telephone conference with LaPerle, *see* LaPerle Memorandum of 1/10/01, no informal or interim order was issued on these benefits. There is no evidence that Buote requested an additional informal conference or a formal hearing on vocational rehabilitation. Because Buote failed to exhaust the administrative remedies available to address Verizon's delay in provision of vocational rehabilitation, his claim of bad faith in the handling these benefits is barred.[5] *See Wentworth v. Crawford & Co.,* — Vt. ——, 807 A.2d 351, 354–55 (2002) (plaintiff required to exhaust vocational rehabilitation administrative remedies prior to bringing negligence action against vocational rehabilitation services provider)[6]; *see also* Vt. Stat. Ann. tit. 21, § 606 (Lexis 1987) (except as otherwise provided, questions arising under the VWCA should be determined by the DLI Commissioner).

■ The Court notes, however, that Buote's separate vocational benefits claim, that Verizon failed to re-employ him "in the first available position suitable" to him as required under § 643b, is not similarly barred. *See* Vt. Stat. tit. 21, § 643b(b) (Lexis 1987). Claims based on this provision may be brought directly in Vermont superior court. *Id.* § 643b(e); *see Schnabel v. Nordic Toyota, Inc.,* 168 Vt. 354, 357–59, 721 A.2d 114, 117–18 (1998) (addressing employee's § 643b claim without considering whether it was raised before DLI). Moreover, to the extent that Verizon seeks summary judgment on the merits of this issue, its motion is denied. Between August and December 2000, Buote notified Verizon of a number of open positions for which he felt he was qualified and able to perform without vocational rehabilitation. Bixby Letters of 8/4/00, 9/15/00, 12/13/00 (Doc. 37, Exs.15, 17, 23). Verizon has not demonstrated that the hiring freeze that existed as of the December 7, 2000 telephone conference prevented it,

---

**5.** This does not mean that Buote cannot use Verizon's delay in providing these benefits, despite the requirement that they be provided within a certain time period, as additional evidence of Verizon's bad faith in handling other aspects of his workers' compensation benefits. As discussed below, the overall pattern of delays and glitches can be used by Buote to infer bad faith on the part of Verizon in the handling of other aspects of his claim.

**6.** The Court has jurisdiction over this matter based on diversity, 28 U.S.C. § 1332(a)(1), and applies the substantive law of the state of Vermont. *See Erie R. Co. v. Tompkins,* 304 U.S. 64, 78–79, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

before or after December 2000, from reinstating Buote to these positions.[7]

### 2. ERISA Preemption

█ Buote contends that after his original 1997 injury he received a pay differential that represented at least a portion of the difference between his workers' compensation weekly pay and his normal weekly pay. The affidavit of Verizon's Ellyse Phillipo states that any such differential would have been defined by Verizon's Disability Plan. Buote does not dispute that the pay differential was defined by the Disability Plan, nor that the Disability Plan is an employee benefits plan governed by ERISA, 29 U.S.C.A. §§ 1002(1), 1003(a)(1) (West 1998). The pay differential claim is thus preempted by ERISA and Verizon is entitled to summary judgment on this issue. *See Id.* § 1144(a); *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 47–48, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987) (§ 514(a) of ERISA preempts state common law claims that relate to an ERISA-covered benefits plan); *see also Buote v. Verizon New England,* 190 F.Supp.2d 693, 705 (D.Vt.2002).

### 3. Res Judicata and Collateral Estoppel

█ Buote argues that DLI's finding that Verizon unreasonably denied and delayed payment of his workers' compensation benefits precludes Verizon from asserting that it handled his claim in good faith. However, both these preclusion doctrines require prior resolution of a claim or issue through a final judgment on the merits and identity of the cause of action or issue resolved by the prior judgment. *Berlin Convalescent Ctr., Inc. v. Stoneman,* 159 Vt. 53, 56–57, 615 A.2d 141, 143–44 (1992).[8] Here there was no formal ruling that could constitute a final judgment on the merits. Instead Verizon voluntarily agreed to follow DLI's informal order, thereby eliminating the need for DLI to issue a formal interim order. There is also no identity of cause of action or issues decided. DLI was permitted to order payment of attorney's fees based merely on negligent delays, Rule 10(a)(3), and there was no determination that Verizon acted knowingly or recklessly, as required for a claim of insurance bad faith. Thus, Verizon is not precluded from arguing that it acted in good faith.

### B. Insurance Bad Faith

█ The Court now turns to the merits of the parties' summary judgment motions. To prove a claim of insurance bad faith in Vermont, a plaintiff must show that "(1) the insurance company had no reasonable basis to deny benefits of the policy, and (2) the company knew or recklessly disregarded the fact that no reasonable basis existed for denying the claim." *Bushey v. Allstate Ins. Co.,* 164 Vt. 399, 402, 670 A.2d 807, 810 (1995); *accord Lauzon v. State Farm Mut. Auto. Ins. Co.,* 164 Vt. 620, 621, 674 A.2d 1246, 1247 (1995). Each party contends that it is entitled to judgment as a matter

---

**7.** In addition, even assuming that seniority is appropriately considered in evaluating the availability of positions to injured employees under § 643b, Verizon has not demonstrated that seniority alone led to the hiring decisions in the two facilities assignor positions of which Buote notified Verizon he was interested. The notice of vacancy award shows that two employees who were not awarded the positions had earlier service dates with Verizon than one of the employees who was awarded the position. Notice of Vacancy Award (Doc. 74, Ex. P).

**8.** State law applies in determining the preclusive effect of a state court judgment. *Kent v. Katz,* 312 F.3d 568, 574 (2d Cir.2002) (citing *Migra v. Warren City Sch. Dist., Bd. of Educ.,* 465 U.S. 75, 81, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984)).

of law on both elements of Buote's insurance bad faith claim.

### 1. No Reasonable Basis to Deny

■ The major dispute regarding the first element of Buote's insurance bad faith claim is whether Verizon had a reasonable basis to deny Buote workers' compensation benefits prior to the July 18, 2000 telephone conference with DLI. Verizon does not dispute that it had no reasonable basis to deny these benefits after that date.

■ The reasonableness of an insurer's denial of benefits must be measured against its obligations under the relevant insurance policy. In this case the VWCA is, in effect, the policy under which benefits were owed to Buote. The VWCA obligates Verizon to compensate its employees for "personal injury by accident arising out of and in the course of employment." Vt. Stat. Ann. tit. 21, § 618(a)(1) (Lexis Supp. 2002). Injury is "harmful work-related change in the body, whether occurring instantaneously or gradually, and includes a claimed or apparent injury or disease." Rule 2.1240. The VWCA was intended, in part, to provide employees "a remedy which is both expeditious and independent of proof of fault," *Morrisseau v. Legac,* 123 Vt. 70, 76, 181 A.2d 53, 57 (1962), and it is to be construed liberally to accomplish its goals, *Montgomery,* 142 Vt. at 463, 457 A.2d at 646.

■ Where a claim is "fairly debatable" an insurer does not act in bad faith if it withholds payment while it determines whether there is a reasonable basis for the claim under the policy. *Bushey,* 164 Vt. at 403, 670 A.2d at 810. There is no question that there was uncertainty as to the exact cause of Buote's symptoms. The determinative factor under the VWCA, however, is whether an employee's injury is work-related. In this case, whether the work-relatedness of Buote's symptoms was "fair-

ly debatable" is a question that requires jury determination.

Almost from the start Dr. Leppman opined that Buote's symptoms were related to his previous fall. On April 5, 2000, Dr. Leppman stated in writing that "[i]t is clear to me, as well as to the consultants who have seen [Buote], that his symptoms are related to his injury even though there is nothing seriously out of place there." Leppman Fax of 4/5/00. According to Dr. Leppman, this statement was based not only on his own analysis and the reports of the specialists, but also on his conversations with them. Leppman Dep. at 60–61 (Doc. 85, Ex. A). In the months that followed, Dr. Leppman continued to assert that the symptoms and the original facial injury were linked, although he had difficulty pinpointing an exact causal relationship.

DLI Workers' Compensation Commissioner Collins was apparently convinced by Dr. Leppman's opinion as she found unreasonable Verizon's failure to provide Buote workers' compensation benefits after Dr. Leppman sent his April 5, 2000 fax. Similarly, workers' compensation specialist LaPerle found that the medical evidence "clearly reflected" a recurrence as of Dr. Leppman's April fax.

The independent medical exam conducted in late June by Dr. Zamansky failed to link the facial bone injury to Buote's symptoms. However, Dr. Zamansky suggested that Buote's vision and balance problems could be related to damage to his ear mechanism, brain, back, or neck, though additional study was needed to render a medical opinion. While sinusitis and migraines were suggested as possible causes by some of the doctors, at no point did any of the examining doctors state that Buote's symptoms as a whole, or indeed these

other possible causes, were not related to his 1997 injury.

Verizon argues that these medical findings are insufficient, particularly in light of the two-year lag between the initial injury and the recurrence, because they rely largely on Buote's subjective complaints and do not identify a precise objective source of his symptoms. In so arguing, Verizon relies on the conclusions reached by two in-house doctors. However, neither of these doctors examined Buote and at least one may not have reviewed all of Buote's medical records. Drain Dep. at 76 (Doc. 80, Ex. 3). Moreover, Gottsche's denial of benefits in early April was not based on the findings of these doctors, who reviewed the records one to two months later. According to Gottsche's notes, on March 30, 2000 he also believed the symptoms to be a recurrence of the 1997 injury. On the same day, however, he reversed his opinion and denied the benefits, allegedly based on nurse case manager Drain's opinion that there was no recurrence and on Dr. Leppman's inability to state that Buote's symptoms were related to the 1997 fall. The deposition testimony and notes of both Dr. Leppman and Drain directly contradict Gottsche in this regard. Verizon has offered no explanation for these divergent views of the same conversation.

Buote's case was complicated by the fact that none of the doctors could provide a definitive medical basis for his symptoms. However, the recurrence of symptoms in the same area as the original injury, in particular the vision problems in and pain around the right eye, made a link to his past fall more than likely. As Dr. Leppman emphasized, precise cause and effect diagnoses are often not possible when issues of pain are involved.[9] Leppman Fax of 4/5/00; Leppman Dep. at 70–72.

In this case, where (1) the conflicting medical opinion came from belated and limited record reviews of in-house doctors, (2) DLI found the medical evidence to reflect a recurrence and the failure to provide benefits to be unreasonable, and (3) there is strong evidence that the claims adjuster's stated basis for denying benefits was a misrepresentation, Buote's claim for workers' compensation cannot be said to have been "fairly debatable" as a matter of law. At the same time, Verizon has presented evidence that would permit a reasonable jury to find that the work-relatedness of Buote's symptoms was in fact "fairly debatable." Accordingly, neither Buote nor Verizon is entitled to summary judgment on this issue.

## 2. Bad Faith

 To prevail on his insurance bad faith claim Buote must also demonstrate that Verizon knowingly or recklessly disregarded the fact that it had no reasonable basis to deny the workers' compensation benefits. *Bushey,* 164 Vt. at 402, 670 A.2d at 809.[10] The Buotes have met this re-

---

**9.** In this regard, Dr. Leppman's deposition testimony that the medical cause of Buote's symptoms could be considered "fairly debatable" is not determinative. Even if the precise medical cause of the recurrence was "fairly debatable," a jury could well conclude on these facts that the connection to Buote's original fall was clearly established and thus that the workers' compensation claim had a reasonable basis.

**10.** Contrary to Verizon's assertion, to avoid the bar of the § 622 exclusivity provision of the VWCA, Buote need not demonstrate that Verizon acted with specific intent to injure him. While the Court left this question open in its previous summary judgment decision, *Buote,* 190 F.Supp.2d at 706, the Vermont Supreme Court has since determined, in the context of a negligence action, that separate economic injury arising subsequent to a work-related injury is not barred by § 622 because it does not arise out, or during the course, of

quirement for the purpose of defeating Verizon's motion for summary judgment. Viewing the evidence in the light most favorable to Buote, a reasonable juror could find that Verizon knowingly, recklessly, and even intentionally, mishandled Buote's workers' compensation claim.

Verizon's course of conduct throughout 2000 and into 2001, in particular the long history of delays and "bureaucratic glitches" in the payment of Buote's benefits, creates a reasonable inference that, at the very least, recklessness was involved. These problems continued despite repeated contact from Buote's attorney informing Verizon of the economic hardship and distress the delays were causing Buote and his family. These problems often involved the same individual, Gottsche. LaPerle, who oversaw the recurrence dispute and contacted Gottsche directly when there were payment problems, believed that Gottsche was uncooperative, created undue delays, and more generally had an "M.O." of not properly adjusting claims. Due to the delays and Verizon's "unreasonable denial of reinstatement" of Buote's workers' compensation benefits in April 2000 after receiving Dr. Leppman's fax, DLI determined that Buote's attorney's fees should be paid by Verizon.

Gottsche's own notes on the Buote claim also suggest that he was acting in bad faith. There is evidence that Gottsche misrepresented his conversation with Drain when he wrote that she felt, based on her conversations with Dr. Leppman, that Dr. Leppman viewed Buote's symptoms as unrelated to the 1997 injury. In her deposition Drain denies making such a statement and her contemporaneous notes from conversations with Dr. Leppman clearly indicate that he had in fact maintained that the injury was related to the 1997 injury. Dr. Leppman's notes and deposition also directly contradict Gottsche's assertion that Dr. Leppman was unable to state that the symptoms were a recurrence.

Verizon has offered seemingly reasonable explanations for many of the delays described above. In particular, it points out that Verizon was dealing with a strike during the month of August. However, these explanations only create a genuine issue of material fact with regard to Gottsche's intent and questions of intent and state of mind are generally more appropriate for jury determination. *Gelb v. Bd. of Elections of City of New York,* 224 F.3d 149, 157 (2d Cir.2000). As a result, Verizon is not entitled to summary judgment on the bad faith element of Buote's claim.[11] By the same token, the Buotes are also not entitled to summary judgment on the issue of bad faith. As Verizon has argued, a reasonable juror might find only that Verizon acted negligently in handling Buote's claim.

employment. *Wentworth,* —— Vt. at ——, 807 A.2d at 356–57.

Moreover, "reckless" disregard does not require, as Verizon suggests, proof of malice, but involves a degree of " 'disregard of probable consequences as is equivalent to a wilful and intentional wrong.' " *Behr v. Hook,* 173 Vt. 122, 787 A.2d 499, 504 (2001) (quoting *Shaw v. Moore,* 104 Vt. 529, 531–32, 162 A. 373, 374 (1932)).

11. Because part of Buote's insurance bad faith claim survives summary judgment, Verizon's argument that Buote's claims for economic loss and the emotional distress caused by that loss are barred by the economic loss doctrine, *see Wentworth,* —— Vt. ——, 807 A.2d at 356–57, is without merit. Under Vermont law, Verizon had a duty to provide Buote workers' compensation benefits where there was no reasonable basis to deny him those benefits. Thus, Verizon had a duty independent of negligence principles to exercise reasonable care in protecting Buote's economic interests.

## IV. Conclusion

WHEREFORE, the Court **DENIES** the Buotes' motion and supplemental motion for summary judgment (Docs.67, 79), **GRANTS in part** Verizon's motion for summary judgment (Doc. 74), as to Verizon's failure to provide pay differentials and vocational rehabilitation benefits, except with regard to Buote's Vt. Stat. tit. 21, § 643b reinstatement right, and **DENIES in part** Verizon's motion for summary judgment related to Verizon's initial determination of ineligibility for workers' compensation and subsequent delay in providing workers' compensation benefits, including reinstatement pursuant to § 643b, during the summer-winter of 2000–2001.