*Hoffman v. LaFountain*, No. 619-10-17 Wncv (Tomasi, J., Mar. 16, 2020).

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## VERMONT SUPERIOR COURT

| | |
|---|---|
| SUPERIOR COURT<br>Washington Unit | CIVIL DIVISION<br>Docket No. 619-10-17 Wncv |

| | |
|---|---|
| Martin Hoffman as Administrator<br>of the Estate of Derrick Hoffman,<br>  Plaintiff<br><br> v.<br><br>Cody LaFountain et al.,<br>  Defendants | |

Opinion and Order on Defendant UCS's Motion for Summary Judgment,
Defendant RMHS's Motion for Summary Judgment,
and the Estate's Motion for Continuance

In the complaint, the Estate of Derrick Hoffman, through Martin Hoffman, his father and the Administrator of his Estate, asserts that Derrick, who was severely disabled, died due to abuse or neglect caused by and while in the care of Defendant Cody LaFountain, his "shared living provider." Other defendants include Rutland Mental Health Services, Inc. (RMHS), United Counseling Service of Bennington County, Inc. (UCS), Jerry Laik, and Walking Tall Solutions, LLC (WTS). These other defendants are alleged to have tortiously facilitated the hiring of Mr. LaFountain as a shared living provider, placed Derrick with him, and/or supervised that shared living arrangement.

In prior proceedings, the Court dismissed all wrongful death claims as untimely under 14 V.S.A. § 1492(a) (wrong death repose period) but noted that the complaint could be fairly interpreted to allege prior-to-death tort claims that may

have been timely filed under 12 V.S.A. § 557(a) (limitations extension for timely prior-to-death tort claims). *See* Decisions filed July 2, 2018 and August 31, 2018.

The Court entered a scheduling order on March 20, 2019. *See* Vt. R. Civ. P. 16.2 (scheduling orders). It required the Estate to disclose experts by May 31, 2019, and it expressly required that all discovery and depositions shall be complete by November 1, 2019. The case was to be trial-ready no later than January 31, 2020.

Following the close of discovery, UCS and RMHS each filed a motion for summary judgment, arguing, among other things, that the Estate has failed to come forward with any evidence showing a genuine issue for trial with regard to any claims of negligence asserted against them.[1] Both parties argued that the Estate's claims against them, generally asserted negligence in the hiring or supervision of Mr. LaFountain or other services provided to Derrick Hoffmann, require expert support and that the Estate has failed to disclose any expert. In fact, RMHS repeatedly asserts in detail that the Estate has completely failed to engage in discovery or otherwise prosecute its case.

In opposition to summary judgment, the Estate has not attempted to clarify or specify its claims against UCS and RMHS, to dispute any facts asserted by them in their Rule 56(c) statements of fact, or to otherwise establish any genuine issue for trial. Rather, the Estate baldly argues that Defendants' motion practice in this case

---

[1] RMHS's motion is on behalf of both RMHS and Defendant Community Access Program (CAP), a named defendant. CAP appears to be a division or program of RMHS and not a separate entity capable of being sued. For ease of reference, the Court refers to RMHS in this decision to include both RMHS and CAP.

2

somehow "tolled" discovery, and the Court now should deny UCS's and RMHS's summary judgment motions so that the scheduling order can be renegotiated by the parties and discovery can begin in earnest. The Estate eventually filed its own motion to that effect, ostensibly seeking a Rule 16.2 "continuance."

    1.    <u>Summary Judgment Standard</u>

Summary judgment is appropriate if the evidence in the record, referred to in the statements required by Vt. R. Civ. P. 56(c)(1), shows that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law. Vt. R. Civ. P. 56(a); *Gallipo v. City of Rutland*, 163 Vt. 83, 86 (1994) (summary judgment will be granted if, after adequate time for discovery, a party fails to make a showing sufficient to establish an essential element of the case on which the party will bear the burden of proof at trial). The Court derives the undisputed facts from the parties' statements of fact and the supporting documents. *Boulton v. CLD Consulting Engineers, Inc.*, 2003 VT 72, ¶ 29, 175 Vt. 413, 427. A party opposing summary judgment may not simply rely on allegations in the pleadings to establish a genuine issue of material fact. Instead, it must come forward with deposition excerpts, affidavits, or other evidence to establish such a dispute. *Murray v. White*, 155 Vt. 621, 628 (1991). Speculation is insufficient. *Palmer v. Furlan*, 2019 VT 42, ¶ 10, 215 A.3d 109, 113. "Where, as here, the moving party does not bear the burden of persuasion at trial, it may satisfy its burden of production [of evidence] by indicating an absence of evidence in the record to support the nonmoving party's case. The nonmoving party then has the burden

3

of persuading the court there is a triable issue." *Mello v. Cohen*, 168 Vt. 639, 639–40 (1998); *see also* 10A Mary Kay Kane, *et al., Fed. Prac. & Proc. Civ.* § 2727.2 (4th ed.) ("the showing of a 'genuine issue for trial' is predicated upon the existence of a legal theory which remains viable under the asserted version of the facts, and which would entitle the party opposing the motion (assuming his version to be true) to a judgment as a matter of law" (*quoting McGuire v. Columbia Broadcasting Sys., Inc.*, 399 F.2d 902, 905 (9th Cir. 1968))).

Rule 56 provides a safety valve in situations in which a party opposing summary judgment "for valid reasons cannot . . . present facts essential to justify the adverse party's opposition to the motion." 10B Mary Kay Kane, *et al., Fed. Prac. & Proc. Civ.* § 2740 (4th ed.) (discussing Fed. R. Civ. P. 56(d)). But the Rule has requirements. Rule 56(d) demands that the opponent to show "by affidavit that, for specific reasons, it cannot present facts essential to justify its opposition." Vt. R. Civ. P. 56(d). "Consequently, when the movant has met the initial burden required for the granting of a summary judgment, the opposing party either must establish a genuine issue for trial under Rule 56(c) or explain why it cannot yet do so under Rule 56(d)." 10B Mary Kay Kane, *et al., Fed. Prac. & Proc. Civ.* § 2740 (4th ed.) (footnotes omitted).

Rule 56(d) motions are commonly predicated on an "insufficient time or opportunity to engage in discovery." *Id.* § 2741 (4th ed.). Importantly, however, "the rule will not be applied to aid a party who has been lazy or dilatory. . . . [A] request for relief under Rule 56(d) is extremely unlikely to succeed when the party

4

seeking the delay has failed to take advantage of discovery." *Id*. (footnote omitted). As the Vermont Supreme Court has long held, "Rule 56 does not require that summary judgment motion decisions await completion of discovery, and to so require would defeat the purpose of the rule. The court need only permit an adequate time for discovery." *Bushey v. Allstate Ins. Co.*, 164 Vt. 399, 405 (citation omitted).

2.      The Motions for Summary Judgment

According to the complaint, the Estate alleges that Mr. LaFountain often improperly left Derrick unsupervised. It further alleges that on August 4, 2014, Derrick—while supervised by Mr. LaFountain—suffered a cut to the head. It also alleges that on November 1, 2014, Derrick, again while supervised by Mr. LaFountain, suffered severe injuries while showering and changing clothes. It then alleges that he was found dead the following day. The complaint goes on to generally assert numerous claims of negligence against all defendants, without meaningful detail or specification as to what negligent acts may have occurred and be attributable to which defendant.

Both summary judgment motions are predicated on the Estate's failure to come forward with any identification of the specific negligence claims against them, any evidentiary support for those claims, and any expert support for relevant standards of care and breaches of those standards.[2] The Estate has not sought to

---

[2] UCS also seeks summary judgment to the effect that the Estate's prior-to-death tort claims are untimely. It does so, however, without addressing the effect of 12 V.S.A. § 557(a), which the Court earlier indicated may reveal such claims to be

establish a dispute of material fact as to those claims. The Court concludes that the summary judgment record is, indeed, devoid of any evidence that would raise a dispute of material fact as to Defendants' actionable negligence. As a result, Defendants have carried their burden of production of showing that there is no evidence from which a jury could find in favor of Plaintiff.

The Estate attempts to avoid summary judgment solely on the ground that it requires additional discovery. As noted above, such a claim is judged under the standards of Rule 56(d). While the Estate has asserted in opposition to summary judgment that it has not had an opportunity for discovery, it has not cogently explained why in an affidavit as required by Rule 56(d). Instead, it filed a motion for a continuance seeking an opportunity to negotiate a new scheduling order with the defendants and then *begin* discovery.

To the extent the motion could be construed as a filing under Rule 56(d), it is procedurally and substantively deficient. First, it is not supported by an affidavit. That alone is a sufficient basis to reject it. Second, it otherwise does not comply with the intent or spirit of Rule 56(d).

The Estate apparently takes the position that it had no obligation to conduct discovery until all pretrial motions, including summary judgment motions, were resolved. It elaborates:

---

timely. *Id.* (providing an extended two-year limitation period if a party dies after a cause of action has accrued but before expiration of original limitations period). The Court need not resolve the issue here. The other points raised by UCS are dispositive regardless of the timeliness question.

6

Nearly every aspect of the remaining discovery to be completed in this action has been affected by defendants' pending motions. For instance, the parties, plaintiff in particular, cannot notice depositions until the Court has considered the pending motions and determines the various defendants are not entitled to dismissal.

Expert discovery is similarly prevented by the constant motions seeking dismissal of the Complaint. Defendant's arguments in its motion papers that two years have elapsed without disclosure of experts ignores the fact that pending motions to dismiss have occupied nearly that entire expanse of time; even as of the consideration of this motion another motion to dismiss has already been made by defendant UCS in its third attempt to dismiss plaintiff's Complaint.

Each of the respective defendant entities bears a different respective liability to the plaintiff, different standards of care, different practices and procedures in the proper operation of their entities with respect to vulnerable adults like Derrick Hoffman. With defendants' continuous motions to dismiss plaintiff would have to retain potentially unnecessary and irrelevant experts, seeking to depose persons that may not be parties to the case, to determine issues related to liability for a party that may not be subject to liability.

Any disclosures made by plaintiff during defendants' motions would result in lack of participation of counsel for the moving parties, as they would not participate in costly depositions of experts, discovery proceedings, or even meaningful mediation in a case they have moved to be dismissed from.

Plaintiff's Opposition 5 (filed Jan. 15, 2020). In other words, the Estate evidently believes that it has no obligation to engage in discovery or otherwise develop its case until after all such pretrial motions have been resolved. *There is no such rule of practice or procedure.*

This case commenced by complaint on October 30, 2017. In two decisions, the latter of which was entered August 31, 2018, the Court disposed of most of the pretrial motions about which the Estate now complains. The Court *later* entered a Rule 16.2 scheduling order on March 20, 2019 which, among other things, required

7

that all discovery and depositions shall be complete by November 1, 2019. No party ever sought to extend any discovery deadlines prior to November 1, 2019. The Estate never sought to extend any discovery deadlines until UCS and RMHS sought summary judgment following the close of discovery. The Estate's motion for a continuance was filed on January 15, 2020.

A Rule 16.2 scheduling order "controls the subsequent course of the action." A case subject to such an order may be continued "only on motion and a showing of good cause." Vt. R. Civ. P. 16.2. "In general, if the party seeking relief can show that the deadlines cannot reasonably be met despite the party's diligence, relief may be given." 6A Arthur Miller *et al., Fed. Prac. & Proc. Civ.* § 1522.2 (3d ed.); *accord Carpenter v. Central Vermont Medical Center*, 170 Vt. 565, 568 (1999). "A party's assertion that further discovery is needed, without more, will not suffice." 6A Arthur Miller *et al., Fed. Prac. & Proc. Civ.* § 1522.2 (3d ed.).

There is no general practice or procedure requiring the determination of all pretrial motions before discovery must be commenced or engaged in earnestly. Stalling discovery until the disposition of summary judgment motions, in particular, would reverse the rule requiring that summary judgment await the completion of sufficient discovery. Moreover, in this case, the Estate's argument for delay squarely conflicts with the timeline of the prevailing scheduling order, any deviation from which requires good cause, which in turn requires some showing that the Estate diligently attempted to comply with it in the first place.

Rather than attempt to comply with the scheduling order with any diligence, the Estate evidently chose to ignore it entirely until all discovery deadlines passed and Defendants filed dispositive summary judgment motions.  Any relief to the Estate in these circumstances would unfairly undermine both the Court's ability to manage its docket consistent with Rule 1 and the purpose of summary judgment in the functioning of the Civil Rules as a whole.  *See* Vt. R. Civ. P. 1 (requiring that the civil rules "be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action"); *Morrisseau v. Fayette*, 164 Vt. 358, 363 (1995) ("Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather an integral part of the . . . Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" (*quoting Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986))).

Accordingly, in response to Defendants' motions, Estate has failed either to establish a genuine issue for trial under Rule 56(c) or explain why it cannot yet do so under Rule 56(d).  Nor has it established a basis for any extension of the discovery deadlines in the scheduling order.

<u>Conclusion</u>

For the foregoing reasons, UCS's and RMHS's motions for summary judgment are granted. The Estate's motion for continuance is denied.

Dated this __ day of March 2020 at Montpelier, Vermont.

_____
Timothy B. Tomasi,
Superior Judge