2014 VT 96

## Helena G. Murphy v. Patriot Insurance Company

[106 A.3d 911]

No. 13-235

Present: **Reiber, C.J., Dooley, Skoglund, Robinson and Crawford, JJ.**

Opinion Filed August 14, 2014

*Todd C. Steadman* of *Davis Steadman & Ford LLC*, White River Junction, for Plaintiff-Appellant.

*Jeffrey S. Marlin* of *Primmer Piper Eggleston & Cramer PC*, Montpelier, for Defendant-Appellee.

¶ 1. **Dooley, J.** Plaintiff Helena Murphy appeals from a superior court judgment in favor of defendant, Patriot Insurance Company, her homeowner's insurer. She contends that: (1) Patriot was estopped from denying coverage for the removal and replacement of a chimney on her home; and (2) the trial court erred in dismissing claims for negligence and bad faith. We affirm.

¶ 2. Except where otherwise noted, the material facts are undisputed and may be summarized as follows. In late July 2007, plaintiff reported to Patriot that a recent storm had caused damage to the flashing on her roof, allowing water to enter the house. Patriot engaged a claims adjuster to investigate the claim,

who went to the property four days after the report. Plaintiff and the adjuster walked around the house inspecting the damage. The adjuster observed damage to the garage and ceiling of an enclosed porch and dampness in the finished portion of the basement. He went up on the roof, but observed "no exterior damage due to wind," and no damage to the flashing on the roof around the rear chimney[1] or holes in the roof. The adjuster acknowledged that he did not consider that flashing might have been torn off during the storm, nor did he inspect the front chimney. In his claims report, the adjuster acknowledged that the insured showed him certain damage from the storm, including heavy rain that had purportedly "flooded the driveway and infiltrated the foundation causing water damage to [the] contents . . . of the basement."

¶ 3. In August 2007, Patriot paid plaintiff a total of $3,553.05[2] for wind and water damage to her home. The following month, plaintiff filed an additional claim with Patriot after a worker discovered damage from rot resulting from water infiltration near the front chimney. The adjuster returned to inspect the property, and Patriot initially paid plaintiff an additional $845 on this claim, after deducting a $500 deductible, in September 2007. In his report from the return visit, the adjuster concluded that the rot was caused at the same time in July 2007 as the damage for which Patriot had already paid plaintiff. Patriot initially disagreed with this conclusion based, in part, on the fact that plaintiff had not discovered a ceiling stain until September 2007. Nevertheless, in November 2007, Patriot refunded plaintiff the $500 deductible from the second payment and paid plaintiff an additional $10,000 — the policy limit for damage from mold or rot — based in part

---

[1] As the story unfolds, the real cause of plaintiff's water infiltration is long-term deterioration around both the rear and front chimney, and the adjuster closely looked only at the rear chimney at the time of his original inspection. Apparently, he looked where he did because some of the water damage was occurring right under the rear chimney. In any event, the record is often confusing because it often fails to distinguish between the chimneys. There is no indication that the adjuster intentionally ignored plaintiff's identification of her problem by looking at only the rear chimney. Nor has plaintiff made a claim on appeal that the adjuster acted in bad faith by looking only at the rear chimney in the first visit.

[2] This came in two payments. The first of $2,928 was exactly that recommended by the adjuster in his initial report minus a deductible. The second, of $625, was a supplementary payment.

on the report of an independent building inspector in October 2007.

¶ 4. In that report, the inspector concluded that the cause of the damage was failed flashing near the chimneys that had allowed water to enter and produce structural damage, rot, and mold. The inspector also concluded that the water penetration was a long term problem that pre-existed the July 2007 storm. The inspector recommended demolition of a portion of the roof to determine the extent of structural damage and the possible replacement of the front chimney. Plaintiff provided a copy of the report to Patriot's claims adjuster, who had planned — in response — to have an engineer inspect the front chimney, but plaintiff had it removed before the inspection could occur.

¶ 5. Patriot paid plaintiff an additional $1889.41 in connection with a subsequent claim in October 2008, and continued to negotiate with plaintiff over a repair estimate in excess of $56,000 which plaintiff maintained was necessary to remediate the substantial remaining rot and mold in the home. In November 2009, Patriot paid plaintiff an additional $15,865.44, for a total — the court found — of $32,653.40 in payments, including cashed and uncashed checks.

¶ 6. In June 2008, while the parties remained in discussion, plaintiff filed a complaint for breach of contract. In August 2009, Patriot moved for partial summary judgment on the scope of coverage for remediation of the mold and rot and replacement of the chimney. In a November 2009 decision, the trial court ruled that the homeowner's policy clearly and unambiguously limited damages relating to the fungi or rot to $10,000, and that the provision providing coverage for the "collapse" of a building or part of a building did not apply to the chimney — which plaintiff had intentionally removed — but the court expressly did not consider whether other policy provisions might apply. Neither of the issues addressed in the 2009 decision are part of this appeal.

¶ 7. Plaintiff subsequently filed an amended complaint adding claims against Patriot for negligence "in inspecting and processing [the] claim and in retaining adjusters to investigate her claim," and "bad faith" in denying the claims with "no reasonable basis." Patriot moved for partial summary judgment on the additional claims, asserting that its relationship with plaintiff was strictly contractual in nature and that it owed no independent tort duty to plaintiff sounding in negligence; Patriot also argued that there was

no basis to conclude that it had acted unreasonably in its handling of plaintiff's claims in violation of the covenant of good faith and fair dealing. Plaintiff opposed the motion.

¶ 8. In June 2012, the trial court issued a written decision granting Patriot's motion. The court agreed that plaintiff had failed to "present[ ] a basis upon [which] to establish that [Patriot] owed a clear, non-contractual duty to her," and further found on the facts alleged that Patriot "had a reasonable, if debatable, basis to deny [p]laintiff's claims under the policy." Accordingly, the court granted summary judgment for Patriot on both claims. The parties later stipulated to the entry of judgment for Patriot on the remaining breach-of-contract count, and the court issued a final judgment in favor of Patriot in May 2013. This appeal followed.

¶ 9. Plaintiff first contends that Patriot was "estopped from denying coverage for the removal and replacement" of the chimney. She relies on her own affidavit stating that Patriot's adjuster told her that he would accept her inspector's report that the chimney had shifted and advised her "to get the needed work performed to the chimney." The affidavit was not submitted to the trial court, however, and therefore cannot be considered on appeal, nor was the estoppel claim raised below or addressed by the trial court. Accordingly, the argument was not properly preserved for review on appeal, and we decline to address it. See *Follo v. Florindo*, 2009 VT 11, ¶ 14, 185 Vt. 390, 970 A.2d 1230 ("In general, issues not raised at trial are unpreserved, and this Court will not review them on appeal."); *Hoover v. Hoover*, 171 Vt. 256, 258, 764 A.2d 1192, 1193 (2000) ("On appeal, we cannot consider facts not in the record.").

¶ 10. Plaintiff also contends the trial court erred in dismissing the negligence count, which alleged that Patriot had an independent tort duty to handle her claim in a reasonable manner and violated that duty by negligently "inspecting and processing [her] claim," with the result that she suffered additional property damage and health problems associated with mold. As noted, the trial court rejected the claim, concluding that plaintiff had failed "to establish that [Patriot] owed a clear, non-contractual duty to her" on the facts alleged. We agree.

¶ 11. As the court and parties here recognized, we addressed a similar issue in *Hamill v. Pawtucket Mutual Insurance Co.*, where the plaintiff-insured also alleged that a claims adjuster hired by his insurer "negligently investigated his claim" by failing to make

a "thorough inspection," rejecting after only a "brief visual inspection" the plaintiff's repair estimates for water damage, and delaying his response for several weeks, with the result that "mold spread through the house, making it uninhabitable." 2005 VT 133, ¶¶ 2-3, 179 Vt. 250, 892 A.2d 226. Plaintiff settled with the insurer, and the trial court later granted summary judgment for the adjuster, concluding that the plaintiff had failed to establish a "cognizable duty on the part of the adjuster[ ] with respect to [the] negligence action." *Id.* ¶ 4.

¶ 12. ▪ We affirmed, observing that the trial court's "refusal to find a cognizable legal duty" was consistent with the holding of a "majority of courts," *id.* ¶ 12, whose reasoning was partly as follows: "The relationship between the insured and the insurer is defined and governed by the insurance policy and its accompanying implied covenant of good faith and fair dealing." *Id.* ¶ 13. As agent for the insurer, the adjuster's conduct is "imputed to the insurer, [which] is subject to liability for the adjuster's mishandling of claims in actions alleging breach of contract or bad faith." *Id.* Thus, subjecting adjusters to additional and potentially open-ended tort liability would be "contrary to the law of agency," *id.,* and disproportionate to their ability to control "their potential risks." *Id.* ¶ 16. This was "troublesome," we explained, because of the "unlikelihood that an action claiming negligent mishandling of a claim would be available against *even the insurer.*" *Id.* (emphasis added); see also *id.* ¶ 14 ("[I]nsureds may seek redress for such injuries through breach-of-contract and bad-faith actions against their insurers").

¶ 13. ▪ Our rejection of an independent tort duty on the part of the insurer's agent in *Hamill* was thus predicated in part on a recognition that the relationship between insurer and insured is fundamentally contractual, "defined and governed" by the coverage provisions in the insurance policy and the covenant of good faith and fair dealing implied therein. *Id.* ¶ 13. We have held on numerous occasions that a negligence claim can exist only if "there is a duty of care *independent* of any contractual obligations." *Springfield Hydroelectric Co. v. Copp,* 172 Vt. 311, 316, 779 A.2d 67, 71-72 (2001) (quotation omitted); see also *Wentworth v. Crawford & Co.,* 174 Vt. 118, 127, 807 A.2d 351, 357 (2002) ("[O]ur caselaw prohibits a claimant from seeking damages for contractual losses through tort law."). Indeed, we recognized the existence of

a first-party bad faith action against an insurer in part because no alternative independent remedy was available. See *Bushey v. Allstate Ins. Co.*, 164 Vt. 399, 402, 670 A.2d 807, 809 (1995) (extending "bad faith" cause of action to first-party claims by insureds). The bad faith remedy would generally be superfluous if mere negligence in handling a claim would be sufficient for liability.

¶ 14. ■ We note that most other courts have limited actions by insureds against their insurers to breach of contract or the implied covenant of good faith and fair dealing and have disallowed actions for negligence based upon an independent duty of care. See, e.g., *Kervin v. S. Guar. Ins. Co.*, 667 So. 2d 704, 706 (Ala. 1995) (noting that the court had "consistently refused to recognize a cause of action for the negligent handling of insurance claims"); *Miel v. State Farm Mut. Auto. Ins. Co.*, 912 P.2d 1333, 1340 (Ariz. Ct. App. 1995) (holding that insurer's duty to its insured was "defined by the terms of the policy and the implied covenant" and that insured could not sue insurer "for a separate and independent claim of negligence in the way it handled the claim"); *Adelman v. Associated Int'l Ins. Co.*, 108 Cal. Rptr. 2d 788, 790 (Ct. App. 2001) (observing that an insured can recover against insurer "for the improper handling of a claim *only* upon a showing that the insurer acted in bad faith; . . . such a showing requires something more than simple negligence"); *DeLaune v. Liberty Mut. Ins. Co.*, 314 So. 2d 601, 603 (Fla. Dist. Ct. App. 1975) (holding that, in action against insurer for failure to settle, "a cause of action based solely on negligence which does not rise to the level of bad faith does not lie"); *Justice v. State Farm Lloyds Ins. Co.*, 246 S.W.3d 762, 765 (Tex. Ct. App. 2008) (rejecting claim by insured for alleged "negligent claim handling" on ground that state "recognizes no negligence duty" by insurer); see also 14 Couch on Insurance § 198:6, at 198-13 (3d ed. 2014) (noting that generally "negligence alone will not suffice" to show that insurer breached duty); D. Wall, Litigation and Prevention of Insurer Bad Faith § 9:9 (3d ed. 2014) (observing that "[m]ost courts" which allow tort damages for "a first-party insurer's failure to pay claims have rejected negligence as a basis of the insurer's liability").

¶ 15. Plaintiff argues here that the reasoning of *Hamill* and the cases that follow it should not apply because they are based on the policy that economic losses are not available in tort actions. It

is accurate that much of the reasoning of *Hamill* is based on the economic loss rule, although the rationale could have been stated more broadly as we have done here. However, the plaintiff in *Hamill* made exactly the same argument as plaintiff in this case makes on essentially the same facts. The plaintiff in *Hamill* argued that because of the adjuster's delay in responding to the claim, mold grew and spread and caused damage to the plaintiff's property that was not economic loss. The trial court in *Hamill* held that "the alleged losses were economic losses, not direct physical losses caused by the adjuster['s] negligence, because they stemmed from [the insurer's] delay in the payment of insurance proceeds," and we affirmed that ruling. 2005 VT 133, ¶ 11. Under *Hamill*, all the damages plaintiff seeks are economic losses.

¶ 16. ▮ We concur in the general view that, as in this case, the insurance policy and the implied covenant of good faith and fair dealing defined plaintiff's expectations for coverage and recovery in the event that benefits were wrongfully denied. Plaintiff does not advance, nor do we discern, any compelling policy or other basis for imposition of an independent, extra-contractual negligence duty in these circumstances. See *id.* ¶ 6 (noting that existence of legal duty depends on variety of policy and equitable considerations). Accordingly, we affirm the trial court's dismissal of the negligence count.

¶ 17. ▮ The question remains whether the court was also correct in dismissing plaintiff's claim for "bad faith," the general shorthand for breach of the covenant of good faith and fair dealing which the law implies in every insurance policy. See *Bushey*, 164 Vt. at 402, 670 A.2d at 809 (extending "bad faith" cause of action to first-party claims by insureds). As we have observed, such a claim requires "more than negligence on the part of the insurer." *Booska v. Hubbard Ins. Agency, Inc.*, 160 Vt. 305, 312, 627 A.2d 333, 336 (1993). To establish bad faith, the plaintiff must show that: "(1) the insurance company had no reasonable basis to deny benefits of the policy, and (2) the company knew or recklessly disregarded the fact that no reasonable basis existed for denying the claim." *Bushey*, 164 Vt. at 402, 670 A.2d at 809; accord *Peerless Ins. Co. v. Frederick*, 2004 VT 126, ¶ 13, 177 Vt. 441, 869 A.2d 112. Where a claim is "fairly debatable," the insurer is not guilty of bad faith even if it is ultimately determined to have been mistaken. *Bushey*, 164 Vt. at 402, 670 A.2d at 809; see

*Chateau Chamberay Homeowners Ass'n v. Associated Int'l Ins. Co.*, 108 Cal. Rptr. 2d 776, 784 (Ct. App. 2001) ("The mistaken [or erroneous] withholding of policy benefits, if reasonable or if based on a legitimate dispute as to the insurer's liability . . . does not expose the insurer to bad faith liability.") (quotation omitted); *Bellville v. Farm Bureau Mut. Ins. Co.*, 702 N.W.2d 468, 473 (Iowa 2005) ("The fact that the insurer's position is ultimately found to lack merit is not sufficient by itself to establish . . . a bad faith claim.").

¶ 18. ■ Measured against our bad faith standard, we find no basis to disturb the trial court's ruling. Plaintiff alleged that Patriot "knew that it had no reasonable basis to deny plaintiff's claims and its conduct constitutes reckless disregard of the fact that such was the case," and advanced a number of specific theories in support of the claim in opposing Patriot's motion for summary judgment. Although the trial court concluded that none supported a finding of bad faith, plaintiff has renewed only two of the arguments on appeal.[3]

¶ 19. ■ First, plaintiff cites the fact that Patriot's claims adjuster submitted a report purportedly denying coverage because surface water had flooded the driveway and "infiltrated the foundation" — an excluded risk — but later stated in deposition that he did not believe that water was coming from the driveway. Plaintiff argues that the inconsistency between the adjuster's report and his actual findings demonstrates that he did not act in good faith.[4]

¶ 20. We find no merit to this argument. The claims adjuster's report stated: "The insured showed us the following damage that we advised were excluded by the policy . . . 2. Due to the heavy

---

[3] Plaintiff has not pursued on appeal any claim that Patriot breached its contractual obligation under the insurance contract by denying coverage. Thus, plaintiff is in the illogical position of claiming that Patriot "had no reasonable basis to deny plaintiff's claims" while foregoing any challenge on the merits to any basis for Patriot's coverage decisions.

[4] Neither party has addressed whether the good or bad faith of the adjuster, who was not an employee of defendant, can be imputed to Patriot for purposes of a bad faith claim. We held in *Hamill* that "insureds may seek redress for such injuries through . . . bad-faith actions against their insurers." 2005 VT 133, ¶ 14. We assume from that statement that Patriot would be liable for damages caused by the bad faith of the adjuster even though Patriot did not act in bad faith independently of the adjuster.

rain, water overflowed the road, flooded the driveway and infiltrated the foundation causing water damage to contents in the [sic] of the basement including an area rug in the basement bedroom." It then went on to items that were covered by the policy including "water damage to the basement bedroom." It noted that it had excluded "water damage to contents" and went on to find there was coverage for damage to a ceiling of an enclosed porch and repairs would include "dry wall, paint and wallpaper in the bedroom" and "sheathing and trim in the enclosed porch." The report went on to calculate the compensable loss in detail, concluding it was $3,428. Patriot paid that amount less a deductible. Apparently, the only part of plaintiff's initial claim that was uncompensated was for personal property.

¶ 21. Plaintiff's complaint stated that: "Smith [the claims adjuster] came to inspect the property for storm damage and reports that the water came in through the garage from ground water coming down the driveway."[5] Plaintiff's property inspector, who developed his report based on an inspection and information provided by plaintiff, addressed the issue of the source of the water damage:

> It was reported that an opinion was expressed that the source of water in the basement and the subsequent damages was caused by flooding conditions from the driveway and road. It was reported that this opinion was formed from the homeowner's uninformed statements and was not independently confirmed. This opinion was used to deny the claim for damages.

¶ 22. The main point of the adjuster's report, with respect to water coming in from the driveway, was that any damage from that water was not covered by the insurance policy. With respect to the claim that water was entering from the roof, the adjuster went on the roof, examined around the rear chimney and determined that there was no hole in the roof in which water could enter. In his report, he stated that an "inspection of the roof and

---

[5] In his deposition, the claims adjuster recounted his first visit to plaintiff's house: "we were talking about where that water had come from. And [plaintiff] told me it was from the road, that it was from water coming down the driveway as a result of the failure of the town to take care of the driveway." Plaintiff, in her deposition, stated that the claims adjuster first suggested that the water came in through the foundation.

chimney revealed no exterior damage due to wind," a covered risk, and his deposition testimony confirmed that coverage was denied because "[t]here was no break in the roof."

¶ 23. We view the argument over the adjuster's initial report as largely irrelevant to the underlying controversy. It is a considerable exaggeration to find an inconsistency between the adjuster's report and his deposition testimony. The report on water entry through the foundation is phrased in terms of the claim by the homeowner rather than based on a finding by the adjuster. As the trial court found based on undisputed evidence, plaintiff admitted "no hole could be seen unless the metal portion of the roof was removed" and "[p]laintiff stated that water infiltration was not due to a hole in the roof but a problem with the chimney flashing that was revealed only when the roof was later opened up."

¶ 24. ▉ At best, plaintiff might claim that the adjuster's failure to find that the true cause of the water infiltration was through the front chimney. Such a claim would fall well short of the knowing or reckless conduct required for a finding of bad faith. See, e.g., *Chateau Chamberay Homeowners*, 108 Cal. Rptr. 2d at 787 ("Sloppy or negligent claims handling does not rise to the level of bad faith."); *Erie Ins. Co. v. Hickman*, 622 N.E.2d 515, 520 (Ind. 1993) (observing that "the lack of diligent investigation alone is not sufficient to support an award" for bad faith); *Sampson v. Am. Standard Ins. Co.*, 582 N.W.2d 146, 152 (Iowa 1998) ("In a first-party bad faith claim, an imperfect investigation, standing alone, is not sufficient cause for recovery if the insurer in fact has an objectively reasonable basis for denying the claim." (quotation omitted)); see generally 14 Couch on Insurance § 207:25 (noting that proof of an "imperfect investigation" is not sufficient basis for bad-faith recovery).

¶ 25. Plaintiff also asserts that a finding of bad faith was supportable on the basis of Patriot's disagreement with its adjuster's conclusion that water damage reported in September 2007 was related to the July 2007 storm. Plaintiff contends that it was unreasonable for Patriot to base its conclusion solely on the appearance of a water stain on the ceiling which was not discovered until that September. Plaintiff relies on the affidavit of an independent inspector stating that it is not uncommon for visible signs of water damage to not appear for several months after the infiltration. The sole effect of Patriot's action was to

require a second deductible for payments made in connection with the water damage reported in September. Patriot, however, decided to waive the payment of a second $500 deductible for the September claim despite its conclusion that the claims were unrelated, and plaintiff has not identified any other tangible harm resulting from the alleged bad faith in this regard. Again, we view Patriot's conduct as irrelevant to the underlying controversy and not as grounds to find bad faith.

*Affirmed.*